**EXHIBIT  A**

**PROFIT PARTICIPATION AGREEMENT**

This **PROFIT PARTICIPATION AGREEMENT** (the "Agreement") is made as of _____, 2021 by and between **Barnet Liberman**, an individual ("Liberman"), and **305-421 LLC**, a New York limited liability company ("Assignee").

RECITALS:

(A)    Liberman and Assignee are parties to that certain Agreement for Assignment of Equity Interests dated as of October 22, 2020, as modified by those certain notice letters dated December 15, 2020 and January 5, 2021 and that certain First Amendment to Agreement for Assignment of Equity Interests dated as of January __, 2021 (as modified, the "Assignment Agreement") providing for the assignment by Liberman to Assignee of governance and economic interests in various Companies.

(B)    The Assignment Agreement provides that the parties will enter into a profit participation agreement.

(C)    On October 22, 2020, The Liberman Group ("TLG"), an entity in which Liberman has an interest, and Assignee, entered into a companion assignment agreement (the "Companion Agreement") pursuant to which TLG agreed to assign to Assignee all of its interest in Hudson Leroy, LLC, and agreed to contribute, *pari passu*, toward payment of the Priority Payment (defined below) pursuant to a companion profit participation agreement (the "Companion PPA").

(D)    On September 1, 2020, Assignee made a loan to 305 Second Avenue Associates L.P. (the "305 Partnership") which was modified as of January 12, 2021 in the amount of $3,500,000.00 (the "305 Second Loan"), which was part of Assignee's Contribution as referred to in the Assignment Agreement.

(E)    On October 1, 2020, Assignee made a loan to Hudson Leroy LLC, an affiliate of Mountbatten Equities, L.P. (the latter in which Liberman has an interest), in the amount of $1,000,000.00, which loan (the "Hudson Leroy Loan') is part of Assignee's Contribution pursuant to the Companion Agreement.

(F)    On November 12, 2020, an affiliate of Assignee, 3-4 Lender LLC made a loan to Liberman in the amount of $80,000 (the "Liberman Loan") secured by a pledge in all of Liberman's interest in 305 Second Avenue Associates, L.P.

NOW, THEREFORE, Liberman and Assignee, in consideration of the closing of the transaction contemplated by the Assignment Agreement, the other mutual promises hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, do hereby agree as follows:

Capitalized terms used herein without definition shall have the meanings assigned to such terms in the Assignment Agreement.

1.    **Repayment of All Loans.** Liberman acknowledges that Mountbatten Equities, L.P. ("Mounbatten") and 305 Partnership (each a "Company", collectively, the "Companies") shall

be responsible for the repayment of Assignee's Contribution, and that under all circumstances, the 305 Second Loan, and the Liberman Loan, as the same may be increased, amended, supplemented and/or replaced (the "Loans") and Assignee's Contribution, shall be repaid prior to any distribution under this Agreement.

2.    **Waterfall of Distributed Funds.**  Following the repayment of the Assignee's Contribution and the Loans in full, (i) after the 305 Second Closing, distributions of excess net cash flow by 305 Partnership, (ii) after the 421 Hudson Closing, distributions of excess net cash flow by Mountbatten, and (iii) after the occurrence of the Combined Closing or both the 305 Second Closing and the 421 Hudson Closing, distributions of net cash flow by the Companies, in each case, shall be made to partners (including Assignee), when Assignee (or its designee) in its sole discretion as general partner determines that it is appropriate to do so.  The Assignee's allocable share of distributed excess net cash flow from each Company following the repayment of Loans, based upon the percentage of Liberman's ownership interests in such Company prior to the transfer to Assignee (or its designee) pursuant to the Assignment Agreement (in each case, "Liberman's Former Share"), shall be paid and accounted for as follows:

(a)    The first monies distributed to Assignee on account of Liberman's Former Share from excess net cash flow from either of the Companies shall be applied toward the repayment of the Liberman Loan until it is fully satisfied;

(b)    Thereafter, following the payment of all Loans, the next $2,500,000 (the "Priority Payment") of excess net cash flow distributed from the Companies on account of Liberman's Former Share or (after the Closing (as defined in the Companion Agreement)) from Hudson Leroy LLC on account of the percentage interest of TLG in Hudson Leroy LLC transferred to Assignee ("TLG's Former Share"), shall be retained by Assignee (such amount, the "Threshold") prior to any distributed funds being available for payment to Liberman.  The Companion PPA shall provide that distributions of excess net cash flow from TLG shall be applied to the Threshold as well, and such TLG distributions so applied shall reduce the Threshold provided in this Agreement.  Once the Threshold has been completely satisfied from distributions from the Companies and/or Hudson Leroy LLC, the next available net proceeds received shall be adjusted, *pari passu*, based upon the total amount of net proceeds paid toward the Threshold from Liberman's Former Share as compared to TLG's Former Share (the "True Up").

(c)    After the Threshold has been satisfied, any excess net cash flow received from the Companies on account of Liberman's Former Share that is due on account of the True Up shall not be distributed to Liberman but shall be distributed under the Companion Agreement until such time as the True Up has been completed i.e. the amount that the TLG's Former Share and Barnet's Former Share contributed toward the Threshold is at parity, and the TLG's Former Share and Barnet's Former Share have each contributed $1,250,000 on a net basis toward the full satisfaction of the Threshold.

(d)    After the Threshold has been fully satisfied and all distributions pursuant to paragraph 2(c) have been made and the True Up is complete, 25% of that portion of the excess net cash flow received by Assignee from each Company attributable to Liberman's Former Share shall be paid by Assignee to Liberman, with Assignee retaining the balance of all cash distributed.

(e)     Any amount distributed to Liberman by a Company on account of his retained minority interest in a Company shall reduce Liberman's Former Share.

(f)     No other funds distributed from the Companies shall be payable to Liberman, and only those allocable funds based upon Liberman's Former Share shall be distributed pursuant to this Agreement as set forth above.

3.     **Reports and Review Rights**.  Annually, upon request, no later than March 15 of each year, Assignee shall provide Liberman with a reasonably detailed accounting of the operations of each Company, the repayment of the Assignee's Contribution, and the determination as to the amount of cash flow available for distribution to owners.  Liberman shall be entitled for a period of four (4) years from the Closing and, at his cost and expense and upon reasonable advance written notice, no more than two (2) times in any calendar year, to review and copy the books and records of the Companies, provided that such materials are maintained as confidential and used for no purpose other than to verify compliance with Assignee's obligations to Liberman.

4.     **No Partnership**.  Nothing in this Agreement shall be construed as vesting in Liberman, and in no event shall Liberman have or retain any control rights, or voting rights in any of the Companies, nor shall this Agreement be deemed to give rise to a partnership between Liberman and Assignee.

5.     **Offset**.  Assignee shall have such right of offset against payments due as provided in the Assignment Agreement.

6.     **Governing Law**.  This Agreement and all questions arising in connection herewith shall be governed by and construed in accordance with the laws of the State of New York without regard to such State's principles of conflicts of law.

7.     **Disputes**.  The parties agree that all disputes, controversies or claims arising out of, touching upon or relating to this Agreement, including, without limitation: *(i)* the administration, breach, enforcement, interpretation or validity of this Agreement, *(ii)* any dispute among the parties to this Agreement, *(iii)* any dispute among one or more of the parties to this Agreement and one or more of such parties' successors, assigns, or affiliates; and *(iv)* any dispute concerning the determination of the scope or applicability of this arbitration clause, shall be settled by binding arbitration in New York County, New York in accordance with the provisions of this paragraph 7 (the "Arbitration") and the rules then prevailing for Commercial Disputes (the "Rules") of the American Arbitration Association (the "AAA").  Such dispute shall be decided by a single arbitrator. The arbitrator shall be chosen in accordance with the Rules and, as applicable, in accordance with the provisions of paragraph 4 of the Assignment Agreement. The decision or award of the arbitrator shall be final and binding upon the parties and may be entered as a judgment in any court having jurisdiction.  Each party shall initially share equally the costs of AAA, and each party shall be responsible for their own legal fees and disbursements; provided, however, the prevailing party in any Arbitration shall have the right to have awarded all reasonable costs and expenses incurred in any arbitration, including but not limited to legal fees and disbursements and the costs of AAA. The parties shall treat the existence and conduct of the Arbitration, any award or decision of the Arbitration, and any settlement of the Arbitration, as confidential.  The confidentiality obligations of this paragraph 7 do not apply to disclosure of any aspect of the

Arbitration required by law to enter judgment on an Arbitration award or to enforce any judgment entered on an Arbitration award.

THE PARTIES AGREE THAT EXCEPT AS PROVIDED IN THE FOLLOWING PARAGRAPH THEY ARE EXPRESSLY WAIVING THEIR RIGHTS TO BRING AN ACTION IN COURT.

TO THE EXTENT THAT ANY COURT WOULD HAVE JURISDICTION OVER ANY ASPECT OF THIS DISPUTE NOTWITHSTANDING THE FOREGOING ARBITRATION CLAUSE (SUCH AS FOR CONFIRMATION OF AN AWARD, OR CLAIMS FOR INJUNCTIVE RELIEF, OR TO COMPEL ARBITRATION, FOR EXAMPLE), EACH OF THE PARTIES TO THIS AGREEMENT HEREBY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE NEW YORK STATE COURTS IN NEW YORK COUNTY. EACH OF THE PARTIES TO THIS AGREEMENT HEREBY WAIVES ANY OBJECTION BASED ON FORUM NON CONVENIENS AND ANY OTHER OBJECTION TO VENUE OF ANY ACTION INSTITUTED HEREUNDER, AND COVENANTS NOT TO RAISE INCONVENIENCE OR VENUE AS GROUNDS TO CHALLENGE ANY ACTION OR PROCEEDING BROUGHT PURSUANT TO THIS PARAGRAPH 7.

8.    **Binding Effect.**  This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, successors, legal representatives and assigns.

[SIGNATURE PAGE FOLLOWS]

4

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day, month and year first above written.

_____

**Barnet Liberman**

**305-421 LLC**

By:_____
     Name:
     Title:

5