SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Blvd., Suite 1
Las Vegas, NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:      (702) 892-0122
Lenard E. Schwartzer, Esq.
bkfilings@s-mlaw.com
(Motion for *Pro Hac Vice* admission pending)

-- and --

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
Stuart.gordon@rivkin.com
Matthew.spero@rivkin.com


*Co-Counsel to Russell Nype and*
*Revenue Plus LLC, Judgment Creditors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Case No. 8-21-70611-REG |
| BARNET LOUIS LIBERMAN, | Chapter 11 |
| Debtor. | **OBJECTION TO DEBTOR'S MOTION FOR ORDER APPROVING SETTLEMENT** |
| | Date:  May 10, 2021 |
| | Time: 10:00 a.m. |

      Russell Nype and Revenue Plus, LLC (collectively "Nype"), judgment creditors (the

"Judgment Creditors"), by and through their co-counsel, Schwartzer & McPherson Law Firm

and Rivkin Radler LLP, oppose the Debtor's Motion for Order Approving Settlement, ECF No.

22 (the "Settlement Motion"), and respectfully state as follows:

## SUMMARY OF OBJECTION

1.   The proposed settlement guts the bankruptcy estate of most of its remaining non-exempt assets in exchange for possible future revenue and is, in effect, a reorganization of the Debtor's assets without a Plan, Disclosure Statement, voting by creditors, or any of the protections necessary to protect creditors in a Chapter 11 reorganization.

2.   The proposed settlement also is not supported by any evidence (expert or non-expert) concerning the value of the assets to be transferred, or any examination of the validity of the secured debt or any of the other allegations in the Settlement Motion (and there has been no time to investigate those allegations).

3.   There is no identification of the owners and managers of the acquiring entities or their principals (other than that they are represented by Rosenberg & Estis, P.C., itself another creditor) or what their relationship is to the Debtor (and there has been no time to investigate).

4.   The Acquirer is, by definition, an insider, as its wholly owned subsidiary (421 HL Fitness LLC) is the general partner of Mountbatten Equities LP, in which the debtor is a limited partner (and, until his resignation on March 10, 2021, was a general partner)[1] and 49% owner of Hudson Leroy LLC, in which The Liberman Group is the other 50% owner.[2]

5.   The creditors, the Official Committee of Unsecured Creditors (the "Committee", which was only appointed on April 23, 2021) and the Office of the United States Trustee have not had the opportunity to examine Liberman at a 341 meeting, which is set for May 7, 2021.  See ECF No.10-2.

6.   This Court has not had time to hold a Case Management Conference yet, as it is set for May 10, 2021. See ECF No. 11.

7.   This Court has not had time to consider a Motion for Appointment of a Trustee or an

---

1 *See* Settlement Motion, para. 26 on p. 8.

2 *See* Settlement Motion, para. 27 on p. 9.

Examiner, which will be filed by the Judgment Creditors imminently, based upon Liberman's multiple fraudulent transfers.

## FACTUAL AND PROCEDURAL BACKGROUND

8.   This bankruptcy filing is just the latest in a more-than-10-year series of ignominious actions by the Debtor to put his assets beyond his creditors' reach.  Far from a successful businessman who was in fine shape until the onset of Covid-19, Liberman was manipulating others and the legal system to benefit himself at the expense of his creditors for at least a decade. A review of Schedules D, E and F of his Statement of Assets and Liabilities, ECF No. 3, shows that a majority in number and a majority in dollar amount of his debts long-preceded the Covid-19 pandemic.  A review of the litigation listed in his Statement of Financial Affairs, ECF No. 5, lists 18 separate lawsuits against Liberman, most of which appear to predate the Covid-19 pandemic. The obligation to Judgment Creditor Nype arose prior to 2007.

9.   Prior to 2007, Nype was owed a commission by Las Vegas Land Partners LLC ("LVLP"), an entity owned 50/50 by Liberman and David Mitchell ("Mitchell").  On April 10, 2015, after 7 years of litigation and a trial, Nype was awarded a judgment by the Eighth Judicial District Court of Nevada in the amount of $2,608,797.50, plus interest from December 7, 2007 against LVLP.  A copy of that judgment is attached hereto as Exhibit "1".[3]  On November 14, 2017, the judgment was affirmed by the Nevada Supreme Court as to the debt and reversed as to costs.  On November 1, 2018, an Amended and Final Judgment on Costs was entered. A copy of that judgment is attached hereto as Exhibit "2".  After denuding LVLP of assets, Liberman and his partner put it into bankruptcy.

10. On January 17, 2020, after 4 more years of litigation and another trial, Nype, by then

---

3 This Court is permitted to take judicial notice of publicly-filed documents such as those filed on the dockets of other courts. *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and relating filings."); *Johnson v. Levy,* 812 F.Supp.2d 167, 176 (E.D.N.Y.2011) ("Judicial notice may encompass the status of other lawsuits in other courts and the substance of papers filed in those actions."). See also *In re Barkany,* 542 B.R. 699, 702 (Bankr. E.D.N.Y. 2015); *In re Richmond,* 534 B.R. 479, 482 (Bankr. E.D.N.Y. 2015) ("It is well established

joined as plaintiff by Shelley D. Krohn, the Chapter 7 bankruptcy trustee in the bankruptcy case of LVLP (Case No. 19-1533-MKN, U.S. Bankruptcy Court, District of Nevada), was awarded a judgment by the Eighth Judicial District Court against Liberman and his partner Mitchell in the amount of $19,641,515.90 for civil conspiracy and fraudulent conveyance.  The judgment held, among other things, that Liberman and Mitchell had taken in excess of $15,000,000 from LVLP and various other *alter ego* entities instead of paying Nype.  A copy of that judgment (Amended Findings of Fact and Conclusions of Law) is attached hereto as Exhibit "3".  On February 26, 2021, Liberman's appeal was dismissed, making the judgment final as to him.  See Order Partially Dismissing Appeal attached hereto as Exhibit "4".[4]

11. This last judgment was granted following a multi-day trial punctuated by revelations of fabrication, backdating, destruction and concealment of evidence[5], and of Liberman's and Mitchell's denuding of assets of the entities they controlled[6], via the distribution of more than $15 million to themselves[7], and in which it turned out that an entire interconnected web of entities was operated by Liberman and his partner with only two bank accounts and virtually no ability to distinguish transactions by purpose or entity.[8]  This Court found that Liberman and his partner engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep

---

that federal courts have authority to take judicial notice of proceedings in other courts, where those proceedings are relevant to the matter at issue.").

4 A bankruptcy court is bound to give preclusive effect to a final judgment obtained in state court. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2d Cir. 1987); *See* 28 U.S.C. § 1738 (judicial proceedings in any State "shall have the same full faith and credit in every court within the United States...as they have by law or usage in the courts of such State ...."). In determining the preclusive effect of a state court judgment, a federal court must apply the issue preclusion rules of the state where the judgment was issued. *New York v. Sokol (In re Sokol)*, 113 F.3d 303, 306 (2d Cir. 1997); *In re Gucciardo*, 577 B.R. 23, 31 (Bankr. E.D.N.Y. 2017). Liberman participated in the multi-day trial before Judge Gonzales and is bound under the doctrines of claim preclusion and issue preclusion from contesting her findings of fact and conclusions of law.

5 *See,* Exhibit "3" at para. 43 and n. 8 (p. 6) (description of some fabrication); para. 60(d) (p. 8-9) (concealment through discovery misconduct), and para. 19(c) (p. 12) (fabricating and backdating of evidence to facilitate the destruction and/or concealment of material financial evidence).

6 *Id*., at para. 36-38 (p. 5) (distributions to themselves made while fully-aware of Nype's claims caused and/or contributed to insolvency or inability to pay debts as they became due).

7 *Id*., at para. 36 (p. 5) (distributed $15,148,339 to themselves).

8 *Id*., paras. 48-54, 56-57 (p. 7).

secret and/or divert millions of dollars in assets away from Nype and/or other creditors[9], and that they distributed assets to themselves with the actual intent to hinder, delay or defraud creditors,[10] then attempted to conceal the assets and distributions through discovery misconduct.[11] As noted above, Liberman's appeal was dismissed and so it is final and unappealable as to him.

12. To obtain his initial judgment, Nype had to overcome a longtime legal strategy that Liberman's partner described as including "efforts to delay trial and exhausting the resources and efforts of" Nype.[12]  This strategy was typified by a (later-revealed) written recommendation from then-counsel to "delay trial and aggravate Nype" by having counsel seek an order of mediation from the "fairly lazy" judge, thus postponing trial, even if it was expected that the mediation "likely would not result in a settlement".[13]

13. And it was at least during the time of that first action that Liberman, ultimately found to be the alter-ego of LVLP, began to secrete his personal assets.

14. Just one example of Liberman's unclean hands involves the New York City penthouse apartment in which he has lived for decades, and which is not disclosed in his bankruptcy filing. Until December 31, 2013, Liberman and his wife, Phyllis Liberman ("Phyllis"), owned in their own personal names two condominium units that comprised the living space of Apartment 805, a penthouse, at the Printing House Condominium.  The most recent reported sale in this building was of Unit 4M (1,395 square feet) for $3,499,000 ($2,508 per square foot) on March 21, 2021.[14] During the LVLP lawsuit, on December 31, 2013, Liberman and Phyllis gratuitously transferred that apartment to an LLC called Hudson 805 LLC. *See* Condominium Unit Deed attached hereto

---

9 *Id.*, paras. 39-40 (p. 5).

10 *Id.*, para. 60 (p. 8-9).

11 *Id.*, para. 60(d) (p. 9).

12 Exhibit 15, introduced in the Second Nevada Action, identified as Document 50042, at page 50042-001, lines 20-21.

13 *Id.*, at page 50042-006.

14 Based on information publicly reported online by Marketproof, Inc. at 421 Hudson Street, West Village | Units | Marketproof.  (*See* Exhibit 14)

as Exhibit "5". Then, within the past 2 years, just months before the trial of Nype's second lawsuit and during the pendency of multiple other lawsuits by other creditors reported in the Statement of Financial Affairs, ECF No. 5, against Liberman individually, Liberman and Phyllis transferred their ownership of Hudson 805 LLC to an entity called TLG Hudson LLC, formed on May 2, 2019.[15]   According to its operating agreement, TLG Hudson LLC, is owned 12.5 percent by each of Liberman and Phyllis, but 75 percent in equal shares by trusts for Liberman's 5 adult children.[16]   Phyllis Liberman signed the operating agreement of TLG Hudson LLC as Trustee of each of the children's trusts.[17]   This shows that during the pendency of litigation, and perhaps as recently as two years ago, shortly before trial in Nype's case, Liberman gratuitously moved ownership of a substantial personal asset largely into the hands of his adult children's trusts.

15. What he did then was even more remarkable.  On December 18, 2019, less than two weeks before the trial in the second Nype action, Liberman and his wife consolidated approximately 11 personal, unsecured notes, dated as having been issued over the course of the 10 prior years and totaling over $2.1 million, reflecting money borrowed from Gary M. Rosenberg (allegedly, typically by a phone call) into a single, secured note to Gary M. Rosenberg in the amount of  $2,163,744.63, granting Gary M. Rosenberg a mortgage against Apartment 805, which, of course, at that point the Libermans did not own personally.  A copy of the 11 personal notes from Liberman are attached hereto as Exhibit "8" and a copy of the Mortgage is attached hereto as Exhibit "9".  The mortgage was signed by each of the Libermans as the managers of TLG Hudson LLC (the entity owned primarily by their children's trusts), as the managing member of Hudson 805 LLC.  By so doing, two weeks before trial, Liberman and his wife Phyllis caused an entity ostensibly owned 75 percent by their adult children's trusts – of

---

[15] A copy of the printout from the NYS Department of State shows the formation date and is attached hereto as Exhibit "6".

[16] A copy of the TLG Hudson Operating Agreement is attached hereto as Exhibit "7". (Exhibit "A" to said agreement shows managing members, while Exhibit "B" shows ownership.)

[17] *Id.* at signature page.

which Phyllis purports to be the Trustee – to mortgage its asset for the purpose of converting the Libermans' personal unsecured obligations to Gary M. Rosenberg into secured obligations of the children's-trust-owned LLC.  By doing so, Liberman has attempted to eliminate a large portion of the equity in Apartment 805, which he had previously fraudulently transferred, and to create a situation where he could put Apartment 805 in the hands of what appears to be a friendly creditor, Gary M. Rosenberg.[18]

16. During the Nype litigation, Liberman testified that he transferred his personal ownership in a wide assortment of entities into a similar largely-trust-owned entity called The Liberman Group LLC which has the same structure: 12.5 percent to Liberman and his wife, Phyllis, 75 percent to the adult children's trusts.

17. Liberman clearly began planning his bankruptcy almost a year ago.  The Statement of Financial Affairs, ECF No. 5, states that he paid a $25,000 retainer to Rosen & Associates, his bankruptcy counsel, on June 22, 2020.  The Statement of Financial Affairs, sworn to by Liberman, shows total pre-bankruptcy payments to Rosen & Associates, P.C. of $105,000.  The Disclosure of Compensation of Attorney for Debtor, ECF No. 32, certified by bankruptcy counsel, states that Rosen & Associates received $80,000 from "Debtor ($50,000); and 305-421 LLC, on behalf of 3-4 Lender LLC, on behalf of the debtor ($30,000)."  Accordingly, the proposed Acquirer, on behalf of the Debtor's purported Lender, has admittedly paid a portion of Liberman's bankruptcy counsel's retainer in the amount of $30,000.

18. In an effort to begin the process of unwinding these fraudulent transfers to collect his judgment, on January 19, 2021, Nype filed, but has not yet served, an action against Liberman, Phyllis, the children's trusts and the Liberman adult children, to whom, based on Liberman's

---

18 Based on the fact that the mortgage names the mortgagee as "GARY M. ROSENBERG, an individual, having an office at 733 Third Avenue, 14th Floor, New York, New York 10017", and that the same address is stated in the mortgage for the law firm of Rosenberg & Estis, it is understood that the Gary M. Rosenberg involved in these transactions is the same Gary M. Rosenberg who is the founding member, chairman and former managing member of the law firm of Rosenberg & Estis, P.C., which are the attorneys for 3-4 Lender LLC, another pre-petition lender, and for 305-421, LLC, the Acquirer under the proposed settlement.

prior testimony, he may have transferred other assets. A copy of the Summons With Notice is attached as Exhibit "10".[19]  Liberman's bankruptcy filing stayed this action, as the fraudulent transfer claims are property of the bankruptcy estate.

19. Against this background, even a preliminary analysis reveals that Liberman's own actions recently are the cause of the faux urgency that purportedly requires prompt approval of the proposed "settlement".  Indeed, the proposed settlement is predated by and predicated upon what appears to be many months of pre-petition transactions between the Debtor and the "white knight" proposed-Acquirer, who is, by the terms of the papers, at least an insider and perhaps even more so than disclosed to this Court.  Those pre-petition dealings appear to have been undertaken with an awareness that some would imperil, rather than protect, Liberman's assets, thus laying a basis for the purported urgency of the settlement.  For example, had Liberman not, pre-petition, conveyed his general partnership interest in the entities (i.e. his control over them), he could have used the bankruptcy process to protect their assets from foreclosure.  Therefore, the choice to put them in harm's way, if they even are in harm's way, was Liberman's.  Moreover, to the extent that Liberman is suggesting that there is an urgency to his motion because he needs to protect the value of his ownership interest in the entities, that value is protected by the automatic stay in this proceeding.

---

19 The Summons With Notice states:

> Nature of the Action: This is an action to avoid and recover those transfers of real and personal property by or on behalf of or for the benefit of Defendant Barnet Liberman (and/or his alter egos) to each and any of the other defendants herein, individually or collectively, as constituted fraudulent transfers, and/or were made in violation of the New York Debtor and Creditor Law, including, *inter alia*, sections 273, 273-a, 274, 275, 276 and 276-a thereof, and to recover damages therefor, and for conspiracy to effectuate such fraudulent transfers and/or to otherwise hide assets from Plaintiffs. Such transfers include, *inter alia*, certain transfers made while Barnet Liberman (and/or his alter egos) were defendant(s), so-named or by operation of law, in an action or actions pending in the State of Nevada.

> The relief sought is the avoidance of such transactions as are shown to have been made contrary to law, the recovery of the property found to have been transferred contrary to law, damages in the amount of $24,584,617.46 plus attorneys' fees, interest, and costs, an order piercing the corporate veil and/or holding one or more of the Defendants liable as alter egos of Barnet Liberman and of each other, for punitive damages, and such other and further relief as to this Court may seem just and proper.

20. Thus, either Liberman was supremely-incompetent in his recent management of the assets that are now part of the bankruptcy estate or he has intentionally manipulated his holdings to try to place some assets outside the boundaries of his bankruptcy estate, while at the same time imperiling others to create false urgency in support of his proposed "settlement".

21. In sum, this factual and procedural history shows that Liberman has already been found by another court to be engaged in a multi-year pattern of fraudulent conveyances and deceit in attempting to hide his assets from collection by Nype, and that that pattern appears to be continuing.  This history should give this Court pause as to the veracity of the statements in the Settlement Motion, the good faith of the settling parties, the fairness and equitableness of the proposed settlement, and the need for prompt action.  It also suggests that this Court should question whether the proposed settlement is in the best interests of the estate.

## ARGUMENT AND AUTHORITIES

### A.  The Proposed "Settlement" Is An Improper *Sub Rosa* Plan.

22. The proposed "Settlement" is, in effect, a sale of the Debtor's assets in a manner that precludes valuation of the assets, competitive bidding, and creditor input, in exchange for an uncertain Profit Participation Agreement. Accordingly, it is an improper *sub rosa* plan:

> A debtor cannot enter into a transaction that "would amount to a *sub rosa* plan of reorganization" or an attempt to circumvent the chapter 11 requirements for confirmation of a plan of reorganization. *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC),* 478 F.3d 452, 466 (2d Cir. 2007) (citing *Pension Benefit Guar. Corp. v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983)). The term "sub rosa" is not defined in the Bankruptcy Code. The Fifth Circuit applied it in *Braniff* in reversing the district court's order approving a sale of the debtors' assets under section 363 of the Bankruptcy Code. The circuit found that the proposed sale was a "plan sub rosa" because if approved, it would have dictated some of the terms of any future reorganization plan, restructured the rights of creditors, and required all parties to release all claims against the debtor, its officers, directors, and secured creditors. *In re Braniff Airways, Inc.*, 700 F.2d at 939-40. Concerns about sub rosa plans are not limited to transactions involving section 363 asset sales. They are germane to any transaction by a debtor that adversely impacts on interested parties' rights to participate in the restructuring process. "The reason *sub rosa* plans are prohibited is based on a fear that a debtor-in-possession will enter into transactions that will, in effect, 'short circuit the requirements of Chapter 11 for confirmation of a reorganization plan.'" *Iridium*, 478 F.3d

at 466 (quoting *In re Braniff Airways, Inc.*, 700 F.2d at 940).

*In re Latam Airlines Grp. S.A.,* 620 B.R. 722, 812–13 (Bankr. S.D.N.Y. 2020) (DIP Facility which "short circuits" the chapter 11 plan review process under the Bankruptcy Code cannot be approved).

23. According to the Debtor's schedules, Debtor's non-exempt assets consist of the following:

| | | |
|---|---|---|
| **TLG Hudson LLC** | **12.50% member** | **$125,000.00** |
| **Liberman Group LLC**[20] | **12.50% member** | **$137,500.00** |
| **Ossining Land Holdings LLC** | **100% member** | **$0.00** |
| **Hudson 805 LLC** | **12.50 % member** | **$0.00** |
| **Mountbatten Equities LP** | **42.33% limited partner** | **$65,000.00** |
| **305 2nd Avenue Associates LP** | **33.11% limited partner** | **$110,000.00** |

24. The proposed Settlement would remove from the bankruptcy estate all of Liberman's interests in 305 Second Avenue Associates LP and Mountbatten Equities LP.  In addition, the Settlement Motion states that the "Acquirer intends to acquire The Liberman Group's interest in Hudson Leroy LLC as part of the series of transactions contemplated with this restructuring." See footnote 2 on page 9 of the Settlement Motion.  No description is given of any remaining assets which may be owned by The Liberman Group.

25. The effect of the proposed Settlement is that a major portion of Liberman's assets are being transferred, not for a sale price which could be competitively marketed, but for deferred and unknown payments from future cashflow of allegedly-distressed properties pursuant to a

---

20 The Debtor's schedules identify "Liberman Group" as an LLC.  The Settlement Motion refers to "The Liberman Group" as a "non-revocable trust which the debtor was the settlor". This trust is not mentioned in Liberman's schedules or Statement of Financial Affairs. Judge Gonzales found that Liberman and Mitchell were the alter egos of Las Vegas Land Partners LLC, Meyer Property Ltd., Zoe Property LLC, Leah Property LLC, Wink One LLC. LiveWork LLC, LiveWork Manager LLC, Aquarius Owner LLC, LVLP Holdings LLC, LiveWorks TIC Successor LLC, FC/LiveWork Vegas LLC and Casino Coolidge LLC. See Exhibit "3", paragraphs 12-25. None of these entities are mentioned in Liberman's schedules or Statement of Financial Affairs in response to Question 27.

Profit Participation Agreement with 305-421 LLC, a New York limited liability company with unknown owners and unknown assets. The proposed Profit Participation Agreement is attached as Exhibit "A" to the Settlement Motion. Among other things, it provides that the first cashflow will be used to pay back loans of $4,580,000 from 305-421 LLC which were made since September 1, 2020. Distributions to Liberman's estate are to be made when 305-421 LLC "in its sole discretion as general partner determines that it is appropriate to do so." Another provision is that the loans can be increased, amended, supplemented and/or replaced", reducing by additional loans the future distribution to Liberman's estate.

26. This Court should be aware that this proposed Settlement appears to have been prepared and acted upon prior to the filing of this bankruptcy case. See Agreement for Assignment of Equity Interests dated October 22, 2020, Exhibit "B" to the Settlement Motion.

**B.  Lack of Evidence.**

27. The Settlement Motion is not supported by evidence. All the allegations in the Settlement Motion are statements made by Liberman's counsel. They are not evidence. *In re Lang*, 293 B.R. 501, 513 (B.A.P. 10th Cir. 2003) ("Counsel's statements in a brief or during a trial are not evidence."); *Wood v. Stratos Prod. Dev., LLC (In re Ahaza Sys.),* 482 F.3d 1118, 1122 n. 1 (9th Cir.2007) ("[A]rguments and statements of counsel are not evidence."); *In re Cohara*, 324 B.R. 24, 28 (B.A.P. 6th Cir. 2005) ("Assertions by counsel do not constitute probative evidence."); *In re Heflin*, 464 B.R. 545, 556 (Bankr. D. Conn. 2011) ("However, statements of counsel are not evidence (unless they constitute an admission).").

28. Before a court may approve a settlement, it must find that it is fair and equitable and in the best interests of the estate. *See In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (citing *Protective Comm. for Indep. Stockholders of TMT Trailers Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). "In order to do so, there must be evidence to support both findings." *In re Ditech Holding Corp.,* No. 19-10412 (JLG), 2019 WL 3294684, at *6 (Bankr. S.D.N.Y. July 19, 2019); *See also In re Chemtura Corp.*, 439 B.R. 561, 593-4 (Bankr. S.D.N.Y. 2010); *In re Pugsley*, 569 B.R. 704, 707 (Bankr. N.D. Ohio 2017) ("The initial burden

of proof rests with the proponent of the compromise, who must demonstrate that the settlement is in the best interest of the estate."); *In re Y-Knot Const., Inc.,* 369 B.R. 405, 408 (B.A.P. 8th Cir. 2007) ("Trustee, as the party seeking the approval of the Settlement Agreement, has the burden of showing by a preponderance of the evidence that the proposed settlement is in the best interest of the estate."); *In re Midway Motor Sales, Inc.,* 407 B.R. 442 (B.A.P. 6th Cir. 2009) ("As the proponent of the settlement agreement, the Trustee bears the burden of showing by a preponderance of the evidence that the proposed settlement is fair and equitable for the nonsettling parties."); *In re Soup Kitchen Int'l Inc.,* 506 B.R. 29, 37–38 (Bankr. E.D.N.Y. 2014) ("The settlement proponent bears the burden 'to persuade this court that the settlement is in the best interests of the estate.'").

29. Notably, there are no appraisals of the properties being transferred and there is no evidence of the amount of debt secured by the properties and no evidence that the debt has been properly perfected and not subject to avoidance as a preferential or fraudulent conveyance.  For example, the Settlement Motion states: "305 Second Avenue Associates, L.P., the original sponsor of the Rutherford Place Condominium, and parent entity of several limited liability companies that still hold unsold condominium units."[21]  But no information is given as to the value of these condominium units.  Mortgage amounts are stated in the settlement Motion in round numbers, but no documentation or evidence is provided concerning the current amount due.

---

21 The Settlement Motion further states in various paragraphs:

    i.    "Rutherford Palace LLC owns ten remaining residential units in Rutherford Place Condominium" (See Settlement Motion, Para. 21, p. 6)

    ii.    "Remnant 305 LLC owns three remaining residential units in Rutherford Place Condominium and has no debt" (See Settlement Motion, Para. 22, p. 7)

    iii.    "Super 714 LLC is the leaseholder of one unit in Rutherford Place Condominium and the owner of one residential unit in Rutherford Place Condominium that is leased to the building's superintendent"  (See Settlement Motion Para. 23, p. 7)

    iv.    "305 Commercial LLC owns various ground floor and concourse level commercial units in Rutherford Place Condominium."  (See Settlement Motion Para. 24, p. 7)

    v.    Mountbatten Equities LP "owns eleven commercial units located in Printing House Condominium." (See Settlement Motion Para. 26, p. 8)

30. The Settlement Motion states:

> 41. The Acquirer's principals have extensive experience in real estate restructuring and assets which will allow the Acquirer to negotiate with each of the Lenders. As part of the acquisition, the Acquirer will obtain in its negotiations with the Lenders a release of liability for certain of the guarantees of the principals as set forth in the Settlement as well as restructuring and extending the mortgages.

31. Since the Settlement Motion has not disclosed the identities of the "Acquirer's principals", the creditors and this Court have no ability to investigate this allegation. Nor is there any explanation why unidentified Lenders would be willing to give up personal guarantees. No evidence is provided. This is particularly troubling because the release of the guarantees purports to be a major benefit of the proposed settlement.

32. The Settlement Motion also states:

> 42. If the Acquirer's agreement with the Debtor are approved by the Court, the Debtor will be relieved of substantial guarantee liabilities and will be able to share in the improved values as the Acquirer turns around these properties and the economy improves. If these properties are liquidated in the current market (which will happen without the Acquirer's resources and abilities) the Debtor will be left with only claims for his guarantees and no possible positive recovery.

33. The Settlement Motion contains no evidence of the value of the properties "in the current market" supporting this allegation. The Settlement Motion contains no evidence of the Acquirer's financial resources and the expertise needed to rehabilitate the properties.

34. The Settlement Motion states: "Pursuant to the terms of a Profit Participation Agreement to be entered into with such entity, discussed below, some of such value will be available for the Debtor and his estate and provide the funding to underwrite distributions under a plan of reorganization." But no guess, estimate or other indication is given concerning the timing and amount of any such distribution that Liberman or the bankruptcy estate will receive.[22]

---

22 The only statement concerning what Liberman and the bankruptcy estate will receive is in paragraph 39 of the Settlement Motion, which states:

This is information which would be required in a Disclosure Statement prior to creditors voting on a Plan of Reorganization.

35. Since Liberman, as the movant, has the burden of proof regarding the Settlement Motion and the grounds to grant it, the lack of evidence is grounds, by itself, for denial of the Settlement Motion.  The lack of evidence is inexcusable, as this bankruptcy filing has been planned for months.  As evidence of the pre-planning, this Court should note that Liberman's bankruptcy counsel, Rosen & Associates, received a retainer of $105,000 beginning with $25,000 on June 22, 2020 and $50,000 on November 30, 2020.  See Statement of Financial Affairs, ECF No. 5; and the Acquirer, 305-421 LLC, was formed by Rosenberg & Estis, P.C. on August 3, 2020. See report from New York State attached as Exhibit "11".

**C.  <u>Lack of Identity of Settling Parties.</u>**

36. The Settlement Agreement identifies the "Acquirer" of Lieberman's assets as 305-421 LLC and 421 HL Fitness LLC (a wholly owned subsidiary).  However, the ownership and management of 305-421 LLC has not been disclosed.  Neither the creditors nor this Court have had the opportunity to identify and investigate the relationship between Liberman and the principals of the Acquirer.  This is an important question as Liberman has a history of transactions to avoid payment to Nype and the formation of multiple entities to hide assets.  See Findings made by Judge Gonzales attached as Exhibit "3".

37. It appears that the Acquirer may be an entity owned by one of the Debtor's attorneys.  It was formed by the firm of Rosenberg & Estis P.C., which is listed as a creditor owed $250,000 in legal fees and $2,000,000 for a guaranty.  See Statement of Assets and Liabilities, ECF No. 3.

---

"The Acquirer will <u>make no immediate payment to the estate</u>. The consideration for the Interests is a Profit Participation Agreement, under which the Debtor shall receive 25% of excess net cash flow, if any, once the Acquirer receives a preferred return of $2,500,0004, as set forth in greater detail in the Profit Participation Agreement." (emphasis supplied)

and

"In addition to the preferred return, the Acquirer is entitled to recover certain transaction and advanced operating expenses, <u>prior to the Debtor receiving any distributions</u>."  (emphasis supplied)

This, in and of itself, raises significant concerns.  Liberman's schedules state that he owes Rosenberg & Estis, PC $250,000 for legal fees and that he guaranteed another debt, of $2,163,744.68, to the firm.  In contrast, Exhibits 8 and 9 to this Objection show more than $2 million in loans from Mr. Gary Rosenberg, as an <u>individual</u>, to Liberman, and Rosenberg's (not his law firm's) December 2019 mortgage on Apartment 805 for, not coincidentally, $2,163,744.68

38. By reason of the transactions that have already occurred, the Acquirer appears to be an insider.  Through a subsidiary, the Acquirer is the sole general partner of Mountbatten Equities, LP in which Liberman was a general partner and currently holds a 43% limited partnership interest which is being acquired through the proposed settlement.  See paragraph 26 of the Settlement Motion.[23]  The Acquirer, 421 HL Fitness LLC, is the 49% owner of Hudson Leroy, LLC in which Liberman, through The Liberman Group, is a 50% owner.  Hudson Leroy is another asset to be acquired by the Acquirer through the proposed settlement.  See paragraph 27 of the Settlement Motion.[24]

39. Settlements with insiders require closer scrutiny.  *In re Drexel Burnham Lambert Grp.,*

---

23 Paragraph 26 of the Settlement Motion, in part, states:

> On or about March 10, 2021, the Debtor resigned as a general partner of Mountbatten Equities L.P., retaining all of his economic interests. As of April 6, 2021, Chamberlin transferred his entire general partnership interest and all but 1% percent of his limited partnership interest in Mountbatten Equities L.P. to 421 HL Fitness LLC (a wholly owned subsidiary of Acquirer). As of April 6, 2021, the Debtor still holds a 43% limited partnership interest, and Chamberlin and the remainder of the limited partners hold a combined 15% limited partnership interest in Mountbatten Equities, L.P. The Acquirer, through 421 HL Fitness LLC, is now the sole general partner, holding 42% partnership interest in Mountbatten Equities L.P. The transfer from Chamberlin to Acquirer (through its subsidiary) was pursuant to Chamberlin's agreement with Acquirer, which is substantially similar to the Assignment.

24 Paragraph 27 of the Settlement Motion states:

> 27. Mountbatten Equities L.P. is the lessor on a ground lease to Hudson Leroy LLC, which in turn subleased certain space to Equinox Hudson Street Inc. ("Equinox"), an unrelated luxury gym. Prior to April 6, 2021, Hudson Leroy LLC was owned by Chamberlin (50%) and The Liberman Group (50%), a non-revocable trust under which the Debtor was the settlor. Hudson Leroy LLC assigned its interest in the sublease to 421 Commercial Fitness LLC, an affiliated entity. As of April 6, 2021, Chamberlin transferred forty-nine (49%) of his membership interest in Hudson Leroy LLC to 421 HL Fitness LLC, the subsidiary of Acquirer. The transfer from Chamberlin to Acquirer (through its subsidiary) was pursuant to Chamberlin's assignment agreement with Acquirer.

*Inc.,* 134 B.R. 493, 498 (Bankr. S.D.N.Y. 1991) ("closer scrutiny of insider agreements should

be added to the cook book list of factors that Courts use to determine whether a settlement is fair

and reasonable.) *In re Present Co.,* 141 B.R. 18, 23 (Bankr.W.D.N.Y.1992) (disapproving

settlement where there was "no investigation by a disinterested trustee or examiner");   *In re*

*Med. Software Sol.*, 286 B.R. 431, 445 (Bankr. D. Utah 2002) (requiring higher level of scrutiny

when proposed sale of Debtor's assets is to purported insider).

40. Another factor bearing on the wisdom of the compromise at hand is the extent to which

the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.

*Matter of Foster Mortgage Corp.,* 68 F.3d 914, 918 (5th Cir. 1995).  In this case, there is

currently no trustee and the creditors' committee has only recently been appointed.

41. In addition, this court should consider Liberman's history of hiding assets to deny

payment to Nype.  Judge Gonzales, after trial, stated:

> 7.      Nype has proven, by a preponderance of evidence his claim for alter ego,
> establishing that Mitchell, Liberman, and each of the Related Entities[25], is the alter ego of
> LVLP and each other.
>
> ***
>
> 19.      The Court concludes that the evidence demonstrates that:
> a.      Mitchell and Liberman engaged in conscious, concerted, and
> ongoing efforts to conceal, hide, convey, keep secret and/or distribute millions of
> dollars in assets away from Nype.

See Amended Findings of Fact and Conclusions of Law attached as Exhibit "3".

42. In addition, based on discovery, Nype would assert that the described transfers were

fraudulent transfers.

---

25 Judge Gonzales' order, on page 4, states:

> For purposes of the term "Related Entity" the following are included: Las Vegas Land Partners,
> LLC, Meyer Property Ltd.,Zoe property, LLC, Leah Property, LLC, Wink One, LLC, Live Work, LLC,
> Live Work Manager, LLC, Aquarius Owner, LLC, LVLP Holding, LLC, LiveWorks TIC Successor
> LLCFC/LiveWork Vegas LLC and Casino Coolidge LLC.

*See* Exhibit "3".

**D.  Lack of Evidence Required for a Sale Hearing.**

43. The Settlement Motion, in effect, is a motion to sell a major portion of Liberman's assets in exchange for possible future payments under the proposed Profit Participation Agreement. This Court has adopted rules for Sale Hearings which require evidence to be presented or, at least, proffered.  See Administrative Order No. 557 which provides:

> (c) Sale Hearing – The evidence presented or proffered at any sale hearing should be sufficient to enable the Court to make the following findings: (1) a sound business reason exists for the transaction; (2) the property has been adequately marketed, and the purchase price constitutes the highest or otherwise best offer and provides fair and reasonable consideration; (3) the proposed transaction is in the best interests of the Debtor's estate, its creditors, and where relevant, its interest holders; (4) the purchaser has acted in good faith, within the meaning of section 363(m) of the Bankruptcy Code; (5) adequate and reasonable notice has been provided; (6) the "free and clear" requirements of section 363(f) of the Bankruptcy Code, if applicable, have been met; (7) if applicable, the sale is consistent with the Debtor's privacy policy concerning personally identifiable information, or, after appointment of a consumer ombudsman in accordance with section 332 of the Bankruptcy Code and notice and a hearing, no showing was made that such sale would violate applicable nonbankruptcy law; (8) the requirements of section 365 of the Bankruptcy Code have been met in respect of the proposed assumption and assignment or rejection of any executory contracts and unexpired leases; (9) where necessary, the Debtor's board of directors or other governing body has authorized the proposed transaction; and (10) the Debtor and the purchaser have entered into the transaction without collusion, in good faith, and from arm's-length bargaining positions, and neither party has engaged in any conduct that would cause or permit the agreement to be avoided under section 363(n) of the Bankruptcy Code.

44. No admissible evidence has been presented or proffered in the Settlement Motion, which prevents this Court from making any of the required findings.

**E.  Lack of Notice.**

45. Rule 2002 provides in relevant part;

> **(a) Twenty-one-day notices to parties in interest**
> Except as provided in subdivisions (h), (i), (l), (p), and (q) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of:
>> **(1)** the meeting of creditors under § 341 or § 1104(b) of the Code, which notice, unless the court orders otherwise, shall include the debtor's employer identification number, social security number, and any other federal taxpayer identification number;

(**2**) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice;

(**3**) the hearing on approval of a compromise or settlement of a controversy other than approval of an agreement pursuant to Rule 4001(d), unless the court for cause shown directs that notice not be sent;

46. Liberman's 5 adult children, the likely beneficiaries of the Liberman Group Trust or the trusts which are alleged to be owners of 75% of TLG Hudson LLC, entities mentioned in the Settlement Motion, are all listed as using Liberman's Apartment 805 as their address.  On December 5, 2019, Liberman testified that this apartment was his home.[26] Since Liberman's 5 children are adults, it seems unlikely that all of them use this one condominium as their mailing addresses.  In a deposition on July 29, 2020, Liberman testified that 4 of his children live in Brooklyn.[27] In addition, it appears that multiple limited partners of Liberman's entities are not listed in the mailing matrix.  Compare Verification of Creditor Matrix, ECF No. 6, with Schedule 5 of Settlement Motion, ECF No. 22-3.  Accordingly, it does not appear that Liberman has provided proper legal notice of these proceedings to, at a minimum, all of his adult children.

47. Similarly, Shelley D. Krohn, the bankruptcy trustee of LVLP and the co-plaintiff with Nype on the judgment issued by Judge Gonzales, has not been included in the creditor's matrix and has not been given notice of this bankruptcy case or the pending motions.  See Verification of Creditor's Matrix, ECF No. 6.

**F.  Improper Behavior Requiring Further Investigation.**

48. As discussed above, Liberman has engaged in a pattern of dishonest behavior to avoid payment of the debt he owes to Nype which will be the basis for requiring further investigation before the proposed settlement can be considered.  In addition, a trustee or an examiner should be appointed to provide an unbiased, fact-based review of Liberman's financial affairs including

---

26 See pages 71-73 of Liberman's December 5, 2019 Deposition transcript attached as Exhibit "12". He now claims that he resides in East Hampton, NY.

27 See pages 33-34 of Liberman's July 29, 2020 Deposition transcript attached as Exhibit "13".

his interests in assets and the right to recover fraudulent transfers.

## **CONCLUSION**

Just over a year ago, Liberman was found to be a participant in the fabrication, backdating, destruction and concealment of evidence, of the denuding of entities he jointly controlled of assets via the distribution of more than $15 million to himself and his partner, through an interconnected web of entities, of engaging in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or divert millions of dollars in assets away from creditors and of the distribution of assets to himself and his partner with the actual intent to hinder, delay or defraud creditors, after which he was found to have attempted to conceal the assets and distributions through discovery misconduct.

In this court Liberman has presented no evidence to support the proposed settlement, and Nype believes that Liberman is continuing his pattern to divert assets from the reach of creditors by entering into the agreement with the Acquirer in the context of the Settlement Motion before creditors and other parties in interest have an opportunity to assert their rights and remedies in this bankruptcy proceeding.

Based on this record, the Settlement Motion should not be approved.

WHEREFORE, Nype respectfully requests that this Court deny the Settlement Motion in its entirety and grant such other and further relief as this Court deems just and proper.

Dated: Las Vegas, Nevada
      May 3, 2021

                    */s/ Lenard E. Schwartzer*
                    Lenard E. Schwartzer, Esq.
                    Schwartzer & McPherson Law Firm
                    2850 South Jones Blvd., Suite 1
                    Las Vegas, NV 89146
                    (Motion for *Pro Hac Vice* admission pending)

                    and

Dated:  Uniondale, New York
         May 3, 2021                    */s/ Stuart I. Gordon*
                                        Stuart I. Gordon, Esq.
                                        Matthew V. Spero, Esq.
                                        RIVKIN RADLER LLP
                                        926 RXR Plaza
                                        Uniondale, New York  11556-0926
                                        Telephone: (516) 357-3000
                                        Facsimile: (516) 357-3333
                                        Stuart.gordon@rivkin.com
                                        Matthew.spero@rivkin.com

5253095.v2