SCHWARTZER & MCPHERSON LAW FIRM
2850 South Jones Blvd., Suite 1
Las Vegas, NV  89146-5308
Telephone:     (702) 228-7590
Facsimile:     (702) 892-0122
Lenard E. Schwartzer, Esq.
bkfilings@s-mlaw.com
(Admitted Pro Hac Vice)

-- and --

RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone: (516) 357-3000
Facsimile: (516) 357-3333
Stuart I. Gordon, Esq.
Matthew V. Spero, Esq.
Stuart.gordon@rivkin.com
Matthew.spero@rivkin.com
Co-Counsel to Russell Nype and
Revenue Plus LLC, Judgment Creditors

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In Re:

BARNET LOUIS LIBERMAN,

                                        Debtor.

Chapter 11

Case No. 8-21-70611-REG

--------------------------------------------------------X

RUSSELL NYPE and
REVENUE PLUS, LLC

                    *Plaintiffs,*

                    *v.*

BARNET LOUIS LIBERMAN,

                    *Defendant.*

Adv. Proc. No. _____

--------------------------------------------------------X

        Plaintiffs RUSSELL NYPE and REVENUE PLUS, LLC (hereinafter collectively,

"NYPE" or "Plaintiffs") as and for their Complaint against BARNET LOUIS LIBERMAN ("Liberman" or "Debtor"), allege:

## JURISDICTION AND VENUE

1.      On April 1, 2021, Liberman filed a voluntary petition for relief under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

2.      As of the date of this Complaint, the Debtor has not been granted a discharge.

3.      This Complaint is timely because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on October 4, 2021.

4.      This is an adversary proceeding in which the Plaintiffs seek a determination of the non-dischargeability of the debt owed by the Debtor to Plaintiffs under Bankruptcy Code §§ 523(a)(2)(A) and 523(a)(6).

5.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § 523.

6.      This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1409(a), as this proceeding arises in and relates to a case pending in this District.

8.      Plaintiffs consent to entry of a final judgment by the Court.

## PARTIES

9.      RUSSELL NYPE is a resident of the State of Florida.

10.     REVENUE PLUS, LLC is a Florida limited liability company.

11.     Las Vegas Land Partners LLC ("LVLP") was a Nevada limited liability company originally owned and controlled by Liberman and David Mitchell.

12.     Liberman is the Debtor in the above-captioned bankruptcy case pending in this Court.

13.     David Mitchell ("Mitchell") was Liberman's partner and co-manager (along with Liberman) of various entities.

## FACTS APPLICABLE TO ALL CLAIMS FOR RELIEF

### A.     The Prior Judgments

14.     This adversary proceeding arises from the nonpayment of a debt, the fraudulent conveyance of assets and a civil conspiracy to hide assets for the purpose of harming Nype, which resulted in Amended Findings of Fact and Conclusions of Law entered by the District Court, Clark County, Nevada (the "District Court") in Case No. A-16-740689-B (the "Findings") which awarded the Plaintiffs judgment against Liberman, Mitchell and others damages of $4,835,111.37 on a fraudulent conveyance claim, $19,641,515.90 on a civil conspiracy claim, and $2,608,797.50 on an alter ego claim on January 17, 2020, and a subsequent Order Awarding Additional Documented Attorneys Fees in the amount of $22,716.00 entered May 13, 2020 (the "Fee Order").   The Findings were made by the District Court after a multi-day bench trial, and are now unappealable as to Liberman.

15.     A true and complete copy of the Findings is attached as Exhibit "A".

16.     A true and complete copy of the Fee Order is attached as Exhibit "B".

17.     The Findings expressly make the findings of fact and conclusions of law recited in paragraphs 18 to 49 hereinbelow.  In other words, the statements in those paragraphs below are recitations from the subject judgment, which judgment this adversary proceeding seeks to be found to be non-dischargeable.

18.     In 2005, Mitchell and Liberman requested Nype's assistance with finding a development partner for LVLP to assist them in developing certain real property in

Downtown Las Vegas.

19.     Prior to closing a transaction with an entity known as Forest City, a dispute arose between LVLP and Nype in late 2006 or early 2007 over the amount Nype was entitled to be paid related to this transaction.

20.     Mitchell and Liberman were fully aware that Nype was expecting to receive at least $2,000,000 from LVLP for his efforts.

21.     Despite understanding Nype's expectations, LVLP, Mitchell and Liberman only set aside $430,000 for Nype.

22.     Shortly after setting aside that amount, Mitchell and Liberman took personal distributions from LVLP in excess of $13,000,000.

23.     On November 2, 2007, LVLP and two other entities sued Nype seeking primarily a declaratory judgment that they did not owe Nype any fee.  Nype counterclaimed seeking compensation for services rendered.

24.     In December 2014, Leah Properties sold certain real property to Casino Coolidge (each of whom are Related Entities, as such term is defined below) for $1,000,000. Mitchell and Liberman caused Leah to distribute sales proceeds in the amount of $341,934.47 directly to themselves, rather than Leah's parent company, LVLP.

25.     After subsequently obtaining judgment on a counterclaim in 2015, Nype made significant attempts to collect on this judgment from LVLP.

26.     Those efforts resulted in recovery of approximately $10,000.

27.     Between 2007 and 2016, Mitchell and Liberman distributed to themselves a total of $15,148,339 from LVLP, LVLP Holdings (which is also controlled by Mitchell and Liberman), and various other entities they owned and/or controlled (collectively, the

"Related Entities")

28.     These distributions were made at times that Mitchell and Liberman were fully aware of Nype's claims and judgments.

29.     The distributions caused and/or contributed to the Related Entities' insolvency and/or inability to pay their debts as they became due.

30.     Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or divert millions of dollars in assets away from Nype and/or other creditors.

31.     Mitchell, Liberman and the Related Entities engaged in conscious, concerted and ongoing efforts to ensure that funds and/or assets that would otherwise be available to Nype to satisfy his claims (and judgment) were kept away from Nype.

32.     Mitchell, Liberman and the Related Entities distributed to Mitchell and Liberman in excess of $15,000,000, which should have been available to satisfy Nype's claims and judgment.

33.     At all relevant times, each of the Related Entities was wholly owned and managed by LVLP or LVLP Holdings.

34.     At all relevant times, each of the Related Entities was beneficially owned, controlled, and managed by Mitchell and Liberman.

35.     One or more of the Related Entities was formed with an initial capitalization of just $10.

36.     At all relevant times, each of the Related Entities was treated by Mitchell and Liberman as a disregarded entity of LVLP Holdings for tax purposes and all of the Related Entities filed one combined tax return.

37.    Except with respect to Related Entities Livework Manager and Casino Coolidge, none of the Related Entities had its own bank account.  Each of the Related Entities used the same bank account to deposit and disburse funds, including distributions to Mitchell and Liberman.

38.    At all relevant times, Mitchell and Liberman caused each of the Related Entities to use the same financial and accounting records, which are not distinguishable by entity.    Each of the Related Entities' financial and accounting records are not distinguishable by entity.

39.    LVLP's accounting records include Mitchell's and Liberman's personal transactions and are commingled with multiple other entities.

40.    Mitchell and Liberman caused each of the Related Entities to use the same general ledger to post all entries under the name of "Las Vegas Land Partners".

41.    Mitchell, Liberman and the Related Entities commingled funds, including personal loans from various banks which are included in LVLP's accounting records and general ledger.

42.    Mitchell and Liberman also used journal entries to post commingled transactions for themselves and the Related Entities.

43.    In 2016, the Related Entities stopped using bank accounts and instead began using journal entries to post entries apparently transacted personally by Mitchell.

44.    As a result of Mitchell and Liberman's domination, influence and control over the Related Entities, the individuality and separateness of the Related Entities *vis-a-vis* themselves and Mitchell and Liberman was and remains nonexistent as evidenced by the commingling of funds, transactions, revenues, expenses, assets, liabilities and contributed capital.

45.    The manner in which Mitchell and Liberman operated the Related Entities makes

it virtually impossible to identify transactions by purpose and/or entity.

46.     The evidence demonstrates that: (a) Mitchell, Liberman and the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized; (c) Mitchell, Liberman and the Related Entities distributed funds to Mitchell and Liberman as individuals without regard to parent entities; (d) Mitchell, Liberman and the Related Entities treated assets of the other entities as their own; and (e) the Related Entities failed to observe corporate or LLC formalities.

47.     The Related Entities are and were influenced and governed by Mitchell and Liberman; there is such unity of interest and/or ownership that Mitchell, Liberman and the Related Entities are inseparable from the other; and the facts are such that adherence to the fiction of separate entities would, under the circumstances, sanction a fraud or promote injustice.

48.     Mitchell, Liberman and the Related Entities have made distributions to avoid satisfying Nype's claims and judgment, including when:

a.     Leah Properties sold certain real property to Casino Coolidge on or about December 17, 2014, and did not transfer the funds to LVLP;

b.     Mitchell and Liberman took personal distributions totaling $15,148.339 [sic] from the Related Entities between 2007 and 2016.  [The actual amount found was $15,148,339, as noted in Paragraph 68 hereinbelow and elsewhere in the Findings.]

49.     In determining that these distributions were made with the actual intent to hinder, delay or defraud creditors and Nype, the District Court found, among other things, the following:

a.      The distributions were made to insiders or other entities which Mitchell and Liberman owned or control (in whole or in part);

b.      The distributions were made at times when Mitchell and Liberman were fully aware of Nype's claims, judgment and/or Nype's intent to sue for the amounts owed to him;

c.      The distributions rendered or contributed to LVLP's and/or the Related Entities' insolvency, and left LVLP and/or the Related Entities unable to pay their debts as they became due;

d.      Mitchell, Liberman and the Related Entities attempted to conceal their assets and the distributions through their discovery misconduct in this matter, which required enormous and expensive effort on Nype's part to <u>attempt</u> to obtain full and proper disclosure; and

e.      Mitchell, Liberman and the Related Entities removed or concealed assets.

50.      The District Court held that in Nevada there are three general requirements for application of the alter ego doctrine: (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud or promote injustice.

51.      The District Court held that Nevada recognizes application of the alter ego doctrine in reverse, in which a creditor is permitted to reach "the assets of a corporation to satisfy the debt of a corporate insider based on a showing that the corporate entity is really

the alter ego of the individual."

52.     The District Court held that application of the alter ego doctrine in reverse "is appropriate where the particular facts and equities show the existence of an alter ego relationship and require that the corporate fiction be ignored so that justice may be promoted."

53.     The District Court concluded that: (a) Mitchell, Liberman and the Related Entities commingled funds, transactions and assets; (b) the Related Entities were and are undercapitalized; (c) Mitchell, Liberman and the Related Entities committed unauthorized diversion of funds; (d) Mitchell, Liberman and the Related Entities treated assets of the other entities as their own; and (e) the Related Entities failed to observe corporate and LLC formalities.

54.     The District Court concluded the evidence demonstrated that the Related Entities: (a) are and were influenced and governed by Mitchell and Liberman; (b) there is such unity of interest and/or ownership that Mitchell, Liberman and the Related Entities are inseparable from the other; and (c) the facts are such that adherence to the fiction of separate entities would, under the circumstances, sanction a fraud or promote injustice.

55.     The District Court concluded that justice and equity required that the District Court impose alter ego liability on Mitchell, Liberman, and the Related Entities.

56.     The District Court concluded Nype had proven, by a preponderance of the evidence, his claim for alter ego, establishing that Mitchell, Liberman, and each of the Related Entities is the alter ego of LVLP and each other.

57.     The District Court concluded Mitchell, Liberman, and each of the Related Entities are jointly and severally liable on Nype's judgment and the damages, attorney's fees,

and costs awarded in the underlying action.

58.     The District Court concluded Nype had proven, by a preponderance of the evidence, his claims for fraudulent transfer, including that certain of the distributions constitute fraudulent transfers within the meaning of Nevada's Uniform **Fraudulent Transfer Act** (NRS 112.180(l)(a)).

59.     The District Court concluded that Nevada's Uniform Fraudulent Transfer Act provides an equitable remedy for creditors affected by a fraudulent transfer, but nothing more.

60.     The District Court concluded that Nype had proven by a preponderance of the evidence that he suffered damages in the amount of $341,934.47 as a result of the fraudulent transfer of the proceeds of the Leah transaction with Casino Coolidge directly to Liberman and Mitchell, rather than to Leah's parent LVLP.

61.     The District Court concluded Nype has proven by a preponderance of the evidence that he suffered special damages in the form of attorney's fees, costs and expert expenses related to the transfers in the total amount of $4,493,176.90.

62.     The District Court concluded, independent of NRS Chapter 112, to prove a civil conspiracy, Plaintiff must prove "a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts."

63.     The District Court concluded that:

a.     Mitchell and Liberman, engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or distribute millions of dollars in assets away from Nype;

b.     Mitchell and Liberman received distributions from **LVLP** and the

Related entities;

      c.      Mitchell, fabricated and backdated evidence to facilitate the destruction and/or concealment of material financial evidence by his agent that would have greatly assisted Nype's case;

      d.      But for Nype's pretrial discovery, the fabrication of evidence would not have been uncovered;

      e.      Nype has proven his claim of civil conspiracy, by a preponderance of the evidence against Mitchell and Liberman; and

68.      The District Court concluded Plaintiffs have established damages on the civil conspiracy claim in the amount of $15,148,339.

69.      The District Court concluded Nype was entitled to recover his attorney's fees as special damages as he was successful on his claim for civil conspiracy in the total amount of $4,493,176.90.

70.      The District Court concluded that Mitchell, Liberman. and the Related Entities' actions and inactions have caused Nype damages in the total amount of $19,641,515.90.

71.      With regard to paragraphs 49 through 70, these legal conclusions were made by the District Court and included in the Findings.

72.      The District Court awarded judgments against Liberman as follows:

      a.      damages of $4,835,111.37 on a fraudulent conveyance claim

      b.      damages of $19,641,515.90 on a civil conspiracy claim and

      c.      damages of $2,608,797.50 on an *alter ego* claim.

74.      In the subsequent Fee Order, the District Court awarded the amount of $22,716

against Liberman.

75.    The Findings and Fee Order are final orders of the District Court.

76.    Liberman's appeal of the Findings has been dismissed.

77.    Liberman did not appeal the Fee Order.

78.    The Findings and Fee Order are entitled to full faith and credit in this Court.

79.    The doctrine of issue preclusion or collateral estoppel applies in this discrageability proceeding.

**B.    Liberman's Post-Judgment Actions.**

80.    After the entry of the Findings, Liberman engaged in further actions to fraudulently convey additional assets from himself and entities in which he had interests and/or control to prevent Nype and other creditors from collecting the debts owed to Nype and other creditors.

81.    Liberman encumbered Apartment 805 located at 421 Hudson Street, New York, New York with an additional lien.

82.    Liberman transferred his management interests in various entities.

83.    Liberman transferred his economic interests in various entities.

84.    Liberman engaged in a civil conspiracy with Phyllis Liberman and his adult children to fraudulently transfer assets which would otherwise have been subject to the claims of Nype and his other creditors

### FIRST CLAIM FOR RELIEF
Bankruptcy Code §523(a)(2)(A)

85.    The allegations in paragraphs 11 through 84 are realleged as if set forth in full at this point.

86.    Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . .

87.    The phrase "actual fraud" in § 523(a)(2)(A) encompasses fraudulent conveyance schemes even when those schemes do not involve a false representation.

88.    Liberman engaged in a fraudulent conveyance scheme to prevent Nype from collecting the debt owed to him by LVLP and caused Nype damages of $4,835,111.37.

89.    The fraudulent conveyance scheme engaged in by Liberman was actual fraud.

90.    By reason of this actual fraud, the award of damages resulting from the fraudulent conveyance scheme is not dischargeable.

## SECOND CLAIM FOR RELIEF
### Bankruptcy Code §523(a)(2)(A)

91.    The allegations in paragraphs 11 through 90 are realleged as if set forth in full at this point.

92.    Liberman engaged in a civil conspiracy to hide assets from Nype.

93.    Liberman had "wrongful intent" while committing a "fraud" by employing deception or trickery in transferring assets to impair Nype's ability to collect the debt owed to Nype.

94.    The wrongful and fraudulent actions of Liberman in engaging in the civil conspiracy caused Nype damages of $19,641,515.90.

95.    By reason of this actual fraud, the award of damages resulting from the civil

conspiracy is not dischargeable.

### THIRD CLAIM FOR RELIEF

Bankruptcy Code §523(a)(6)

96.    The allegations in paragraphs 11 through 95 are realleged as if set forth in full at this point.

97.    Bankruptcy Code § 523(a)(6) provides, in relevant part, that:

(b) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt—…

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . .

98.    Liberman engaged in a civil conspiracy to fraudulently convey assets to prevent collection of debts by Nype.

99.    Liberman's actions in this civil conspiracy were intended to cause injury to Nype by preventing him from collecting the judgment he had against LVLP.

100.    Liberman's actions in this civil conspiracy were done with actual malice towards Nype.

101.    Liberman's actions in this civil conspiracy necessarily injured Nype by preventing him from collecting his judgment against LVLP.

102.    Liberman's actions in this civil conspiracy were done without just cause or excuse.

103.    Liberman's participation in the civil conspiracy also included his knowing use or enjoyment of the fraudulently transferred assets.

104.    Liberman's actions in this civil conspiracy caused damages to LVLP by removing

assets that LVLP could have used to pay the judgment Nype had against LVLP.

105.    Liberman's actions in this civil conspiracy caused Nype damages of $19,641,515.90.

106.    By reason of Liberman's conduct, the award of damages resulting from the civil conspiracy is not dischargeable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RUSSELL NYPE and REVENUE PLUS, LLC request judgment against Debtor/Defendant BARNET LOUIS LIBERMAN as follows:

a)  Judgment declaring the entire amount owed by Debtor/Defendant to Plaintiff, in the amount of not less than of $4,835,111.37, plus interest, attorneys' fees and costs incurred to date, nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), in this bankruptcy case and in any future bankruptcy case;

b)  Judgment declaring the entire amount owed by Debtor/Defendant to Plaintiff, in the amount of not less than of $19,641,515.90, plus interest, attorneys' fees and costs incurred to date, nondischargeable pursuant to 11 U.S.C. § 523(a)(2) and (6), in this bankruptcy case and in any future bankruptcy case

c)  An award of attorneys' fees and costs incurred in bringing this action; and

d)  Such other relief as is just and proper under the circumstances.

Dated:    Las Vegas, Nevada
          July 16, 2021

                              */s/ Lenard E. Schwartzer*
                              Lenard E. Schwartzer, Esq.
                              Schwartzer & McPherson Law Firm
                              2850 South Jones Blvd., Suite 1
                              Las Vegas, NV 89146

                              and

Dated:  Uniondale, New York
        July 16, 2021

                              */s/ Stuart I. Gordon*
                              Stuart I. Gordon, Esq.
                              Matthew V. Spero, Esq.
                              RIVKIN RADLER LLP
                              926 RXR Plaza
                              Uniondale, New York  11556-0926
                              Telephone: (516) 357-3000
                              Facsimile: (516) 357-3333
                              Stuart.gordon@rivkin.com
                              Matthew.spero@rivkin.com