UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

In Re:                                                                    Chapter 7

Barnet Louis Liberman,                                          Case No. 21-70611-(REG)

          Debtor.

------------------------------------------------------------------X

Marc A. Pergament, Chapter 7 Trustee of the          Adv. Proc. No.
Estate of Barnet Louis Liberman,

               Plaintiff,                                       Complaint

      - against -

Hudson 805 LLC,
Phyllis Liberman, individually and in her
capacity as Trustee of:
    the Trust Agreement f/b/o Ava Liberman,
    the Trust Agreement f/b/o Zoe Liberman,
    the Trust Agreement f/b/o Stella Liberman,
    the Trust Agreement f/b/o Leah Liberman,
    and the Trust Agreement f/b/o Aaron Liberman,
Ava Liberman, Zoe Liberman, Stella Liberman,
Leah Liberman, Aaron Liberman, TLG Hudson LLC,
Liberman Group LLC, Axos Bank, United States of
America, New York State Department of Taxation
and Finance, Gary M. Rosenberg, and Board of
Managers of Printing House Condominium,

             Defendants.

------------------------------------------------------------------X

        Marc A. Pergament, Chapter 7 Trustee ("Trustee" or "Plaintiff") of the Estate of

Barnet Louis Liberman ("Debtor"), by his attorneys, Weinberg, Gross & Pergament LLP, as and for

his Complaint herein, respectfully alleges and represents to this Court as follows:

        1.      This action arises under 11 U.S.C. §§ 363, 541, 544, 548 and 550, Rules 6009,

7001 and 7003 of the Federal Rules of Bankruptcy Procedure and § 270 et seq. of the New York

Debtor and Creditor Law ("DCL").

2.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 as this action arose in and under the Debtor's pending Chapter 7 case.

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

4.    This complaint is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.    This is an action for, among other things, for the avoidance and recovery of fraudulent transfers of the Debtor's interest in property, including but not limited to the condominium units in the building located at 421 Hudson Street, Units 805/806 and C-8, New York, New York (the "NYC Condo Units"), or, in the alternative, for money damages equal to the value of the transfers.

6.    This action also seeks declaratory relief relating to the NYC Condo Units pursuant to FRBP 7001(2), (7) and (9) and 11 U.S.C. § 363(h).

## THE PARTIES

7.    Plaintiff is the duly appointed Chapter 7 Trustee of the Debtor's bankruptcy estate.

8.    Plaintiff is authorized to file this action under section 323 of the Bankruptcy Code and FRBP 6009.

9.    Defendant Phyllis Liberman ("Phyllis") is an individual residing in the State of New York and is the Debtor's wife.

10.    Defendant Phyllis is sued herein individually and in her capacity as the Trustee of five separate trust agreements as follows: the Trust Agreement f/b/o Ava Liberman, the Trust Agreement f/b/o Zoe Liberman, the Trust Agreement f/b/o Stella Liberman, the Trust Agreement f/b/o Leah Liberman and the Trust Agreement f/b/o Aaron Liberman (collectively, the foregoing trusts may be referred to herein as the "Trusts").

11.    The Debtor and Phyllis are the Grantors of each of the Trusts.

2

12.    Defendants Ava Liberman, Zoe Liberman, Stella Liberman, Leah Liberman and Aaron Liberman are the adult children of the Debtor and Defendant Phyllis Liberman (collectively the "Children").

13.    Upon information and belief, Defendant Hudson 805 LLC (the "Hudson 805") is a domestic limited liability company duly organized under the laws of the State of New York with a place of business at 421 Hudson Street, Apt. 805, New York, New York.

14.    Defendant Hudson 805 holds title to the NYC Condo Units.

15.    Upon information and belief, Defendant TLG Hudson LLC ("TLG Hudson") is a domestic limited liability company duly organized under the laws of the State of New York with a place of business at 421 Hudson Street, Apt. 805, New York, New York.

16.    Upon information and belief, Defendant Liberman Group LLC ("Liberman Group") is a domestic limited liability company duly organized under the laws of the State of New York with a place of business at 421 Hudson Street, Apt. 805, New York, New York.

17.    Upon information and belief, Defendant Axos Bank f/k/a Bofi Federal Bank ("Axos") is a federally charted banking corporation organized under the laws of the State of New York, having its headquarters at 4350 Lo Jolla Village Drive, Suite 100, San Diego California.

18.    On or about September 29, 2021, Axos filed Proof of Claim 31-2 as a secured claim in the sum of $6,375,930.02.

19.    On or about July 28, 2022, Defendant United States of America, by the Department of Treasury - Internal Revenue Service ("IRS"), filed Amended Proof of Claim 11-4 as a secured claim in the sum of $2,746,906.59 and an unsecured claim in the sum of $1,054,390.73.

20.    The IRS claim includes a Notice of Federal Tax Lien ("NFTL") filed prepetition against "Hudson 805 LLC as Transferee of Barnet L. and Phyllis S. Liberman" with the

3

City Register in New York County on April 30, 2019, recording number 2019000137022, with regard to the Debtor and Phyllis's joint income tax liability for year 2012, for the assessed amount of $528,227.20 (plus interest and statutory additions).

21.      The IRS also filed an NFTL against "Hudson 805 LLC as Transferee of Barnet L. and Phyllis S. Liberman" post-petition (on June 8, 2022) with the City Register, recording number 2022000230219, adding tax years 2013, 2015, and 2016, for the total assessed amount (including 2012) of $3,110,244.37.

22.      On or about April 6, 2021, Defendant New York State Department of Taxation and Finance ("NYS") filed Proof of Claim 1-1 as a secured claim in the sum of $544,476.64 and an unsecured claim in the sum of $50.00.

23.      Upon information and belief, Defendant Gary M. Rosenberg ("Rosenberg") is an individual with a place of business at 733 Third Avenue, 14th Floor, New York, New York.

24.      On or about September 30, 2021, Rosenberg filed Proof of Claim 66-1 as a secured claim in the sum of $2,958,683.84.

25.      Upon information and belief, Defendant Board of Managers of Printing House Condominium ("Printing House") is a condominium association organized under the laws of the State of New York with offices at 421 Hudson Street, New York, New York.

26.      On or about September 3, 2021, Defendant Printing House filed Proof of Claim 27-1 as a secured claim in the sum of $687,136.64.

27.      Each of Defendants Axos, IRS, NYS, Rosenberg and Printing House assert liens on some or all of the NYC Condo Units.

4

## BACKGROUND

28.     On April 1, 2021 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

29.     In the Petition, the Debtor identified a condominium allegedly owned by the Debtor and Phyllis as tenants by the entirety located at 10 Palomino Court, East Hampton, New York ("East Hampton Property") as their principal residence.

30.     On June 28, 2021, the Debtor's bankruptcy case was converted from one under Chapter 11 to one under Chapter 7, and the Trustee was appointed as the interim trustee and duly qualified as the Trustee.

(a)     The Unsatisfied Judgments.

31.     On or about November 2, 2007, Las Vegas Land Partners ("LVLP") and two other entities commenced an action in the District Court of the State of Nevada, County of Clark (Case No. A551073), against Russell Nype ("Nype") for a declaratory judgment.

32.     The Debtor was a manager and a 50% member of LVLP.

33.     On or about December 5, 2007, Nype asserted counterclaims for breach of contract and unjust enrichment against LVLP ("Nevada Breach of Contract Action").

34.     Upon information and belief, on or about November 5, 2013, while the Nevada Breach of Contract Action was pending, the Debtor formed the Trusts.

35.     Upon information and belief, on or about April 10, 2015, the Nevada State Court entered a judgment in favor of Nype and against LVLP in the Nevada Breach of Contract Action in the sum of $2,608,797.50 ("Underlying Nevada Judgment").

36.     Upon information and belief, Nype collected the sum of $10,000.00 in partial satisfaction of the Underlying Nevada Judgment.

37.    Upon information and belief, on or about October 27, 2015, the Underlying Nevada Judgment against LVLP was filed and docketed in the Clerk's Office of the Supreme Court of the State of New York, County of New York, pursuant to CPLR § 5402 ("New York County Judgment").

38.    Upon information and belief, on or about July 26, 2016, Nype filed an action in Nevada against the Debtor, the Debtor's business partner, David J. Mitchell ("Mitchell"), LVLP and numerous other Nevada-based entities formed by the Debtor and Mitchell (collectively the "LV Entities") to seek to enforce the Underlying Nevada Judgment ("Nevada Collection Action").

39.    In the Nevada Collection Action, Nype claimed, among other things, that the Debtor and LVLP (and the LV Entities) were alter egos of one another.  Nype additionally asserted claims for fraudulent conveyance of Nevada-based assets and civil conspiracy.

40.    In support of his alter ego claim, Nype alleged that the Debtor, Mitchell, LVLP and the LV Entities:

> dominate, influence and control each other; that there existed
> and still exists a unity of ownership between them; that the
> individuality and separateness of each entity was and
> remains non-existent; that each such entity was and remains
> a mere shell and naked framework which the other
> Defendants used and still use to conduct their business
> affairs; that each such entity is and remains inadequately
> capitalized; and that an injustice and fraud upon [Nype] will
> result if the theoretical separateness of the Defendant entities
> is not disregarded and each such Defendant held liable for
> all relief being sought herein.

41.    Upon information and belief, on August 19, 2019, LVLP filed a petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada ("LVLP Bankruptcy").

42.     Upon information and belief, on or about January 17, 2020, the Nevada State Court entered a judgment against the Debtor, Mitchell and the LV Entities ("Alter Ego Judgment").

43.     The Alter Ego Judgment provides for a judgment against the Debtor, Mitchell and the LV Entities, jointly and severally, on the alter ego claim in the amount of $2,608,797.50, representing the amount of the Underlying Nevada Judgment.

44.     The Alter Ego Judgment further provides for a judgment against the Debtor, Mitchell and the LV Entities, jointly and severally, on the fraudulent conveyance claim in the sum of $4,835,111.37, and on the civil conspiracy claim in the sum of $19,641,515.90.

45.     The judgment on the alter ego claim is based upon the Nevada State Court's findings, following a 1-week non-jury trial, that:

(a)     between 2007 and 2016, while "fully aware of Nype's claims," the Debtor and Mitchell distributed to themselves a total of $15,148,339 from LVLP and the LV Entities;

(b)     the distributions caused and/or contributed to the insolvency of LVLP and the LV Entities;

(c)     the Debtor and Mitchell "engaged in conscious, concerted and ongoing efforts to conceal, hide, convey, keep secret and/or divert millions of dollars in assets away from Nype and/or other creditors;

(d)     the Debtor and Mitchell "beneficially owned, controlled, and managed" LVLP and the LV Entities;

(e)     LVLP and the LV Entities were undercapitalized;

7

(f)     the Debtor and Mitchell caused LVLP and the LV Entities to use the same bank accounts;

(g)     the Debtor and Mitchell treated LVLP and the LV Entities as disregarding entities of LVLP Holdings LLC for tax purposes;

(h)     the Debtor and Mitchell caused LVLP and the LV Entities to use the same financial and accounting records, which did not distinguish between entities and included personal transactions and postings of the Debtor and Mitchell;

(i)     the Debtor and Mitchell caused LVLP and the LV Entities to use the same general ledger to post all entries under the name "Las Vegas Land Partners";

(j)     the Debtor, Mitchell, LVLP and the LV Entities commingled funds;

(k)     the Debtor and Mitchell included personal loans from various banks in the LVLP accounting records and general ledger;

(l)     the Debtor and Liberman used journal entries to post commingled transactions for themselves, LVLP and the LV Entities;

(m)     as a result of the Debtor's and Mitchell's domination, influence and control over LVLP and the LV Entities, the individuality and separateness of LVLP and the LV Entities, vis-à-vis themselves and the Debtor and Mitchell, "was and remains non-existent as evidenced by the commingling of funds, transactions, revenues, expenses, assets, liabilities and contributed capital";

(n)    the manner in which the Debtor and Mitchell operated LVLP and the LV Entities makes it virtually impossible to identify transactions by purpose and/or entity;

(o)    the Debtor, Mitchell, LVLP and the LV Entities commingled funds, transactions and assets;

(p)    the Debtor and Mitchell distributed funds to themselves without regarding to parent entities;

(q)    the Debtor and Mitchell, LVLP and the LV Entities treated assets of the other entities as their own;

(r)    LVLP and the LV Entities failed to observe corporate or LLC formalities;

(s)    "there is such a unity of interest and/or ownership that" the Debtor, Mitchell and the LV Entities are inseparable from the other; and

(t)    adhering to the fiction of LVLP and the LV Entities as separate entities "would, under the circumstances, sanction a fraud or promote injustice."

46.    Following entry of the Alter Ego Judgment, the Debtor and certain of his co-defendants filed motions to strike the judgment, amend the judgment and/or to stay enforcement of the judgment. By orders entered on or about March 30, 2021, the motions were denied.

47.    On April 1, 2021, the Debtor filed his bankruptcy petition in this Court.

48.    On or about July 16, 2021, Nype commenced an adversary proceeding seeking to declare the Alter Ego Judgment non-dischargeable under 11 U.S.C. § 523(a)(2)(A) and (a)(6).

9

49.     On or about August 24, 2021, Nype filed Proof of Claim No. 26-1 as an unsecured claim in the sum of $19,664,231.90.

50.     On September 23, 2021, Nype moved for partial summary judgment on his § 523(a)(2)(A) claim with regard only to the $4,835,111.37 fraudulent conveyance award.

51.     By Order entered on December 3, 2021, this Court denied Nype's motion for partial summary judgment, noting that since no order was entered in the LVLP Bankruptcy granting relief from stay to allow Nype to continue to prosecute the Alter Ego Action, "this Court cannot find, based on the current record, that the Nevada [Collection] Judgment is a valid and enforceable judgment entitled to collateral estoppel relief."

52.     Upon information and belief, in response to this Court's December 3, 2021 Order, on March 11, 2022, Nype moved before the Nevada Bankruptcy Court to annul the automatic stay so that the Alter Ego Judgment would not be treated as a violation of the automatic stay.

53.     By Order entered on May 20, 2022, the Nevada Bankruptcy Court granted Nype's motion and ordered that effective August 19, 2019, "the automatic stay arising in the [LVLP Bankruptcy Case] is ANNULLED with respect to" the Nevada Collection Action.

54.     Upon being adjudicated an alter ego of LVLP under the Alter Ego Judgment, the Debtor became liable for the Underlying Nevada Judgment, as domesticated in New York County, in the sum of $2,608,797.50.

55.     Upon information and belief, the Underlying Nevada Judgment remains unsatisfied.

(b)     The Fraudulent Transfers.

i.      The NYC Condo Units.

56.     On or about May 15, 2003, the Debtor and Defendant Phyllis purchased the NYC Condo Units.

57.     Upon information and belief, on or about December 20, 2013, the Debtor formed Hudson 805, with him and Defendant Phyllis as 50/50 managing members.

58.     Upon information and belief, on or about December 26, 2013, in order to thwart his creditors, the Debtor transferred the NYC Condo Units from himself and Defendant Phyllis to Hudson 805 for no consideration.

59.     The deed reflecting the transfer of the NYC Condo Units from the Debtor and Defendant Phyllis to Hudson 805 was recorded on January 3, 2014.

60.     Upon information and belief, Defendant Phyllis did not provide any services on behalf of Hudson 805.

61.     Upon information and belief, the Debtor exercised complete dominion and control with respect to every aspect of the business of Hudson 805, including but not limited to the transfer of the NYC Condo Units to Hudson 805.

62.     Upon information and belief, on or about January 1, 2014, the Debtor gifted membership interests in Hudson 805 totaling 37.5% (or 75% of his 50% interest) pro rata to the five Trusts for no consideration, with each Trust receiving a 7.5% non-managing membership interest.

63.     Upon information and belief, on or about January 1, 2014, at the behest of the Debtor, Defendant Phyllis transferred membership interests in Hudson 805 totaling 37.5% (or

11

75% of her 50% interest) to the Trusts for no consideration, with each Trust receiving a 7.5% non-managing membership interest.[1]

64.    Following the NYC Condo Transfers, the Trusts each held a 15% non-managing membership interests in Hudson 805 and the Debtor and Defendant Phyllis each held 12.5% membership interests in Hudson 805.

65.    The NYC Condo Transfers are reflected in the United States Gift (and Generation-Skipping Transfer) Tax Returns of the Debtor and Defendant Phyllis, which, upon information and belief, were filed on or about October 14, 2015 ("2014 Gift Tax Returns").

66.    The 2014 Gift Tax Returns reflect an "appraised" value of the NYC Condo Units in the sum of $11,000,000.00, and identify liabilities, in the form a mortgage in favor of First Republic Bank, in the sum of $4,400,000.00.

67.    According to the 2014 Gift Tax Returns, the fair market value of the 7.5% non-managing membership interest in Hudson 805 gifted by the Debtor to each Trust was in the sum of $495,000.00, less a "40% discount for non-managing member minority interest & lack of marketability," resulting in a net gift to each Trust in the sum of $297,000.00.

68.    Upon information and belief, on or about May 2, 2019, ownership of Hudson 805 was transferred to Defendant TLG Hudson for no consideration.

69.    Upon information and belief, Defendant TLG Hudson is owned as follows: (a) 12.5% by the Debtor; (b) 12.5% by Defendant Phyllis; and (c) 75% collectively by the Trusts.

---

[1] The transfers identified in paragraphs "58," "62" "and "63" of this Complaint may be referred to herein collectively as the "NYC Condo Transfers."

ii.    The Liberman Group.

70.    Upon information and belief, on or about December 20, 2013, the Debtor formed the Liberman Group.

71.    Upon information and belief, when he formed the Liberman Group, the Debtor became its 100% managing member.

72.    Upon information and belief, in or about 2015, the Debtor transferred 50% of his membership interest in the Liberman Group to Defendant Phyllis for no consideration.

73.    Upon information and belief, Defendant Phyllis never provided any services on behalf of the Liberman Group.

74.    Upon information and belief, on or about January 1, 2014, the Debtor gifted membership interests in the Liberman Group totaling 37.5% (75% of his remaining 50% membership interest) to the Trusts for no consideration, with each Trust receiving a 7.5% non-managing membership interest.

75.    Upon information and belief, on or about January 1, 2014, at the behest of the Debtor, Defendant Phyllis gifted membership interests in the Liberman Group totaling 37.5% (75% of her 50% membership interest that she had received from the Debtor) to the Trusts for no consideration, with each Trust receiving a 7.5% non-managing membership interest.

76.    Following the transfers to the Trusts, each Trust held a 15% non-managing membership interest in the Liberman Group, and the Debtor and Defendant Phyllis each held 12.5% managing membership interests in the Liberman Group.

77.    Upon information and belief, on or about January 1, 2016, the Debtor gifted the entirety of his economic interest in the following entities to the Liberman Group, which gifts were purportedly split with Defendant Phyllis: (a) 40% of At Home Israel LLC; (b) 100% of

Casino Coolidge LLC; (c) 50% of Hudson Leroy LLC (economic interest only); (d) 95% of NYSA Partners LLC; (e) 75.15511% of TrueFresh LLC; (f) 0.833333% of Triventures II Fund LP; and (g) 33.33% of The Gym at Southport, LLC, The Gym at Southberry LLC, New Milford Sports Club LLC, The Gym at 42nd Street, LLC, and TG CT I, LLC.

78.    According to the 2016 Gift Tax Returns of the Debtor and Defendant Phyllis, the total fair market value of the interests gifted to the Liberman Group by the Debtor and Defendant Phyllis was in the sum of $6,912,500.00, and the increase in value attributable to each Trust's 15% interest in the Liberman Group was in the sum of $1,036,875.00, less a "40% discount for non-managing minority interest and lack of marketability," resulting in a net gift to each Trust in the sum of $622,125.00.

79.    The 2016 Gift Tax Returns of the Debtor and Defendant Phyllis further reveal that on January 1, 2016, the Debtor gifted 15% of his non-managing membership interests in each of the following Subchapter S Corporations to the Trusts for no consideration: (a) 12.65509% of Winterlab Ltd.; (b) 12.65511% of Nordic Delights Food, Inc.; (c) 12.5% of Balmoral Limited, and (d) 33.33% of Gym at Portchester, Inc.[2]

80.    The 2016 Gift Tax Returns do not attribute any value to the interests in Winterlab Ltd., Nordic Delights Food, Inc., Balmoral Limited and Gym at Portchester, Inc. gifted by the Debtor to the Liberman Group.

81.    Upon information and belief, the Transfers diminished the assets of the Debtor's bankruptcy estate.

---

[2] The transfers identified in paragraphs "72," "74," 75," "77" and "79" of this Complaint involving the Liberman Group may be referred to herein collectively as the "Liberman Group Transfers." The NYC Condo Transfers and the Liberman Group Transfers may be referred to herein collectively as the "Transfers." On December 6, 2019, New York State enacted the "Uniform Voidable Transactions Act," which repealed and replaced certain provisions relating to fraudulent conveyances. The new provisions, however, do "not apply to a transfer made or obligation incurred before" the effective date of April 4, 2020. As such, the new provisions do not apply to the Plaintiff's claims herein.

82.    On the date of each of the Transfers, there existed unsecured creditors of the Debtor, including but not limited to Nype, who hold allowable unsecured claims under Section 502 of the Bankruptcy Code and who could avoid the Transfers under applicable state law.

### FIRST CLAIM FOR RELIEF
### (Property of the Estate under 11 U.S.C. §§ 541 and 542)

83.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "82" of this Complaint as if more fully set forth at length herein.

84.    The Debtor's estate has a legal and equitable interest in the Transfers.

85.    The Debtor's legal and equitable interest in the Transfers is property of the Debtor's estate.

86.    Defendants are in possession of certain of the Transfers.

87.    Defendants do not have any right or entitlement to the Transfers.

88.    By reason of the foregoing, and in accordance with sections 541 and 542 of the Bankruptcy Code, Plaintiff is entitled to the entry of an order and judgment directing the Defendants to turn over any and all property of the Debtor's estate, plus attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendants' use of the Transfers.

### SECOND CLAIM FOR RELIEF
### (Turnover of Property of the Estate under 11 U.S.C. § 542)

89.    Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "88" of this Complaint as if more fully set forth at length herein.

90.    The Debtor had a legal and equitable interest in the Transfers.

91.    The Debtor's legal and equitable interest in the Transfers is property of the Debtor's estate.

92.     The Defendants have retained certain of the Transfers, or the benefit of the Transfers, for which no consideration was provided to the Debtor.

93.     By reason of the foregoing, Plaintiff is entitled to the entry of an order and judgment against the Defendants under Sections 105 and 542 of the Bankruptcy Code directing a turnover of the Transfers.

### THIRD CLAIM FOR RELIEF
### (DCL § 273-a - NYC Condo Transfers)

94.     Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "93" of this Complaint as if more fully set forth at length herein.

95.     Upon information and belief, on the Petition Date, there were actual existing unsecured creditors holding claims allowable under 11 U.S.C. § 502, who could have avoided the NYC Condo Transfers under DCL § 273-a.

96.     Upon information and belief, the Debtor did not receive fair consideration in exchange for the NYC Condo Transfers within the meaning of DCL § 272.

97.     Upon information and belief, on the dates of the NYC Condo Transfers, the Debtor, by virtue of being the alter ego of LVLP, was a defendant in the Nevada Breach of Contract Action, which was an action for money damages within the meaning of DCL § 273-a.

98.     The Nevada Breach of Contract Action resulted in the Underlying Nevada Judgment in the sum of $2,608,797.50.

99.     The Underlying Nevada Judgment remains unsatisfied.

100.    By virtue of the foregoing, under DCL §§ 273-a and 278, Plaintiff is entitled to a judgment: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers so that the Trustee may recover and sell the assets. In the alternative, if the assets are not recovered, the Court should award Plaintiff damages against: (i)

Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value

of the NYC Condo Units transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant

Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and

the Court should award Plaintiff prejudgment interest, or such other amount as may be determined

by the Court.

## FOURTH CLAIM FOR RELIEF
### (DCL § 273-a - Liberman Group Transfers)

101.    Plaintiff repeats and realleges each and every allegation contained in

paragraphs "1" through "100" of this Complaint as if more fully set forth at length herein.

102.    Upon information and belief, on the Petition Date, there were actual existing

unsecured creditors holding claims allowable under 11 U.S.C. § 502, who could have avoided the

Liberman Group Transfers under DCL § 273-a.

103.    Upon information and belief, the Debtor did not receive fair consideration in

exchange for the Liberman Group Transfers within the meaning of DCL § 272.

104.    Upon information and belief, on the dates of the Liberman Group Transfers,

the Debtor, by virtue of him being the alter ego of LVLP, was a defendant in the Nevada Breach

of Contract Action, which was an action for money damages within the meaning of DCL § 273-a.

105.    The Nevada Breach of Contract Action resulted in the Underlying Nevada

Judgment in the sum of $2,608,797.50.

106.    The Underlying Nevada Judgment remains unsatisfied.

107.    By virtue of the foregoing, under DCL §§ 273-a and 278, Plaintiff is entitled

to a judgment: (a) finding that the Liberman Group Transfers were fraudulent conveyances; (b)

setting aside the Liberman Group Transfers. In the alternative, if the assets are not recovered, the

Court should award Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined

at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (d) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## FIFTH CLAIM FOR RELIEF
### (DCL § 273 - NYC Condo Transfers)

108.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "107" of this Complaint as if more fully set forth at length herein.

109.    Upon information and belief, the Debtor was either insolvent at the time of the transfers involving the NYC Condo Units or was rendered insolvent thereby within the meaning of DCL § 271.

110.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the NYC Condo Transfers within the meaning of DCL § 272.

111.    Upon information and belief, on the date of the NYC Condo Transfers, there were actual existing unsecured creditors holding claims allowable under 11 U.S.C. § 502 who could have avoided the Transfers under DCL § 273.

112.    By virtue of the foregoing, under DCL §§ 273 and 278, Plaintiff is entitled to a judgment: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers so that the Trustee may recover and sell the assets. In the alternative, if the assets are not recovered, the Court should award Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo Units transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and

should also award Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## SIXTH CLAIM FOR RELIEF
### (DCL § 273 - Liberman Group Transfers)

113.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "112" of this Complaint as if more fully set forth at length herein.

114.    The Debtor was either insolvent at the time of the transfers involving the Liberman Group or was rendered insolvent thereby within the meaning of DCL § 271.

115.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the transfers involving the Liberman Group within the meaning of DCL § 272.

116.    Upon information and belief, on the date of the transfers involving the Liberman Group, there were actual existing unsecured creditors holding claims allowable under 11 U.S.C. § 502 who could have avoided the transfers under DCL § 273.

117.    By virtue of the foregoing, under DCL §§ 273-a and 278, Plaintiff is entitled to a judgment: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers.  In the alternative, if the assets are not recovered, the Court should award Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## SEVENTH CLAIM FOR RELIEF
### (DCL § 275 - NYC Condo Transfers)

118.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "117" of this Complaint as if more fully set forth at length herein.

119.    Upon information and belief, the Debtor did not receive fair consideration in exchange for the NYC Condo Transfers within the meaning of DCL § 272.

120.    Upon information and belief, on the date of the NYC Condo Transfers, the Debtor knew or should have known that he would incur debts beyond his ability to pay such debts as they matured.

121.    Upon information and belief, Debtor's knowledge of such inability to pay such debts requires that the NYC Condo Transfers be declared fraudulent conveyances under DCL § 275 as to both existing and future creditors.

122.    By virtue of the foregoing, under DCL §§ 275 and 278, Plaintiff is entitled to a judgment: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers.  In the alternative, if the assets are not recovered, the Court should award Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo Units transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## EIGHTH CLAIM FOR RELIEF
### (DCL § 275 - Liberman Group Transfers)

123.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "122" of this Complaint as if more fully set forth at length herein.

124. Upon information and belief, the Debtor did not receive fair consideration in exchange for the Liberman Group Transfers within the meaning of DCL § 272.

125. Upon information and belief, on the date of the Liberman Group Transfers, the Debtor knew or should have known that he would incur debts beyond his ability to pay such debts as they matured.

126. Upon information and belief, Debtor's knowledge of such inability to pay such debts requires that the Liberman Group Transfers be declared fraudulent conveyances under DCL § 275 as to both existing and future creditors.

127. By virtue of the foregoing, under DCL §§ 275 and 278, Plaintiff is entitled to a judgment:

128. By virtue of the foregoing, under DCL §§ 275 and 278, Plaintiff is entitled to a judgment: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers. In the alternative, if the assets are not recovered, the Court should award Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (d) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## NINTH CLAIM FOR RELIEF
### (DCL § 276 - NYC Condo Transfers)

129. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "128" of this Complaint as if more fully set forth at length herein.

21

130.    The NYC Condo Transfers were made by the Debtor with the actual intent to hinder, delay or defraud present or future creditors of the Debtor.

131.    Under DCL § 276, Plaintiff may avoid the NYC Condo Transfers.

132.    By virtue of the foregoing, Plaintiff is entitled to judgment: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers. In the alternative, if the assets are not recovered, the Court should award Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo Units transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## TENTH CLAIM FOR RELIEF
### (DCL § 276 - Liberman Group Transfers)

133.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "132" of this Complaint as if more fully set forth at length herein.

134.    The Liberman Group Transfers were made by the Debtor with the actual intent to hinder, delay or defraud present or future creditors of the Debtor.

135.    Under DCL § 276, Plaintiff may avoid the Liberman Group Transfers.

136.    By virtue of the foregoing, Plaintiff is entitled to judgment: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers. In the alternative, if the assets cannot be recovered, the Court should award Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial,

but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court.

## ELEVENTH CLAIM FOR RELIEF
### (Nominee - Defendant Hudson 805)

137. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "136" of this Complaint as if more fully set forth at length herein.

138. Upon information and belief, at all relevant times mentioned herein, Defendant Hudson 805 held title to the NYC Condo Units for the Debtor and Defendant Phyllis as their undisclosed agent to shield true ownership from the Debtor's creditors.

139. Upon information and belief, Defendant 805 Hudson paid inadequate or no consideration for the NYC Condo Transfers.

140. Upon information and belief, Debtor placed the NYC Condo Units in the name of Defendant Hudson 805 due to, among other things, the pendency of the Nype Breach of Contract Action, and to shield his assets from creditors.

141. Upon information and belief, following his transfer of the NYC Condo Units to Defendant Hudson 805, the Debtor and Defendant Phyllis remained in possession and control of the NYC Condo Units through their 12.5% managerial interests and also through Phyllis's status as the Trustee of the Trusts, and continued to enjoy the benefits of the NYC Condo Units, without paying arms-length rent to Defendant Hudson 805.

142. By virtue of the foregoing, Plaintiff is entitled to a judgment declaring Defendant Hudson 805 to be the "bare legal title-holding nominee" of the Debtor and Defendant Phyllis, who remained, as of the petition date, the true "beneficial owners" of the NYC Condo Units.

## TWELFTH CLAIM FOR RELIEF
### (To Disallow Claims Pursuant to 11 U.S.C. §§ 502(d) and (j))

143. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "142" of this Complaint as if more fully set forth at length herein.

144. Defendant Phyllis and Defendant Children are transferees of the Transfers.

145. Defendant Phyllis and Defendant Children have not paid the amount of the Transfers or turned over such property for which they are liable under section 550 of the Bankruptcy Code.

146. Pursuant to Bankruptcy Code section 502(d), any claims of Defendant Phyllis and Defendant Children against the Debtor, including those set forth in Proof of Claim Numbers 32, 37, 40, 41, 56, must be disallowed until such time as the Trustee recovers the properties from the foregoing Defendants or they pay to Plaintiff an amount equal to the aggregate amount of the Transfers, together with interest thereon.

## THIRTEENTH CLAIM FOR RELIEF
### (11 U.S.C. § 363(h) - NYC Condo Units)

147. Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "146" of this Complaint as if more fully set forth at length herein.

148. Upon the entry of a judgment setting aside the NYC Condo Transfers, Debtor's interest in the NYC Condo Units shall become property of the estate pursuant to 11 U.S.C. § 541(a)(3).

149. The Plaintiff will then be entitled to sell the estate's interest in the NYC Condo Units pursuant to 11 U.S.C. § 363(h).

150. Upon information and belief, the value of the NYC Condo Units exceeds existing liens on the estate's interest in the NYC Condo Units.

24

151.    The partition in kind of the NYC Condo Units among the estate and the co-owner is impracticable because: (a) they are residential real property, and (b) the sale of the Estate's interest alone would realize significantly less than a sale free and clear of Defendant Phyllis' interest in the NYC Condo Units.[3]

152.    Upon information and belief, a sale of the Estate's interest in the NYC Condo Units would realize significantly less for the Estate than the sale of such property free of the interest of the co-owner.

153.    Upon information and belief, the benefit to the Estate of a sale of the NYC Condo Units free of the interest of the co-owner outweighs the detriment, if any, to such co-owner.

154.    Upon information and belief, the NYC Condo Units are not used in the production, transmission or distribution for sale of electric energy or of natural of synthetic gas for heat, light and power.

155.    Plaintiff seeks an order compelling the sale of the NYC Condo Units so that Plaintiff may recover the full value of the Estate's interest in the NYC Condo for the benefit of the Debtor's Estate and distribute the value of the co-owner's interest to her and/or her lien creditors.

156.    By virtue of the foregoing, Plaintiff is entitled to a judgment pursuant to §§ 541, 542 and 363(h) of the Bankruptcy Code against Defendant Phyllis: (a) authorizing and directing Plaintiff to sell the NYC Condo, free and clear of Defendant Phyllis' interest therein; and (b) determining Defendant Phyllis' distributive interest in and to the proceeds from the sale of the NYC Condo ("Sales Proceeds") or the interest of any holders of liens against her interest.

---

[3] Upon information and belief, the NYC Condo Units are connected internally and currently form a single residence. The Trustee believes that the NYC Condo Units are more valuable in that configuration.

## FOURTEENTH CLAIM FOR RELIEF
### (Avoidance of Security Interest or Equitable Subordination  Rosenberg Claim)

157.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "156" of this Complaint as if more fully set forth at length herein.

158.    On or about September 30, 2021, Rosenberg filed Proof of Claim 66-1 as a secured claim in the sum of $2,958,683.84 ("Rosenberg Claim").

159.    As set forth more fully below, while aware of the Debtor's dire financial condition, Defendant Rosenberg engaged in inequitable conduct to seek to improve his position vis-à-vis the Debtor's other creditors.

160.    Upon information and belief, Defendant Rosenberg is a close personal friend of the Debtor.

161.    Upon information and belief, commencing on or about August 14, 2009, Defendant Rosenberg made a series of loans to the Debtor (the "Loans").

162.    Upon information and belief, the Loans were evidenced by promissory notes prepared by Defendant Rosenberg and executed by the Debtor (the "Promissory Notes").

163.    Upon information and belief, the last time that the Debtor made a payment towards the Loans was in June 2015.

164.    Upon information and belief, on or about December 17, 2019, Defendant Rosenberg made his last Loan to the Debtor, in the amount of $217,528.61, bringing the total Loan balance to $2,163,744.63.

165.    Upon information and belief, as known by Defendant Rosenberg, as of on or about December 17, 2019, the Debtor was insolvent.

166.    Upon information and belief, due to their close personal relationship, prior to December 17, 2019, Defendant Rosenberg had never requested that the Debtor provide Rosenberg with any form of security or collateral.

167.    Upon information and belief, on or about December 17, 2019, concerned that the Debtor had no ability to repay his debt, Defendant Rosenberg caused the Debtor to have Defendant 805 Hudson execute a promissory note in Defendant Rosenberg's favor in the sum of $2,163,744.63, despite the fact that the Loans were made to the Debtor, not 805 Hudson.

168.    Upon information and belief, the 805 Hudson mortgage note was secured by a mortgage on the NYC Condo Units (the "Rosenberg Mortgage").

169.    Upon information and belief, Defendant Rosenberg had the Debtor personally guaranty the obligations of Hudson 805 under the mortgage promissory note.

170.    The December 17, 2019 transaction between and among Defendant Rosenberg, the Debtor and Hudson 805 was not conducted at arm's length.

171.    Defendant Rosenberg's inequitable conduct conferred an unfair advantage on Defendant Rosenberg over other creditors.

172.    The Rosenberg Mortgage was granted within two (2) years of the Petition Date.

173.    Avoidance of the security interest granted to Rosenberg or equitable subordination of Rosenberg's Claim is consistent with the Bankruptcy Code, as it will not affect any party's legally valid claims and does not seek to infringe on the rights of any other creditors

174.    By virtue of the foregoing, the grant of the Rosenberg mortgage should be avoided pursuant to 11 U.S.C. § 548 or, alternatively, the Rosenberg Claim should be equitably

27

subordinated to all but general unsecured claims, and the Plaintiff should be granted a judgment against Rosenberg equitably subordinating Claim No. 66-1 pursuant to 11 U.S.C. § 510.[4]

### FIFTEENTH CLAIM FOR RELIEF
### (Bankruptcy Rule 7001(2) - NYC Condo Units)

175.    Plaintiff repeats and realleges each and every allegation contained in paragraphs "1" through "174" of this Complaint as if more fully set forth at length herein.

176.    Distribution of the sales proceeds following a sale of the NYC Condo under § 363(h) will require a determination of the validity, priority, and extent of the liens asserted by Defendants Axos, IRS, NYS and Printing House.[5]

177.    Upon information and belief, the lien of Defendant Axos is based, among other things, upon various mortgages and consolidated mortgages, including a mortgage dated June 4, 2003 made by the Debtor and Defendant Phyllis, as mortgagors, to Morgan Stanley Dean Witter Credit Corporation, as mortgagee, in the sum of $2,000,000.00, and recorded in the Office of the City Register, County and State of New York ("Register's Office"), on September 9, 2003, and a mortgage dated July 13, 2005 made by the Debtor and Defendant, as mortgagors, to Morgan Stanley Credit Corporation, as mortgagee, in the sum of $1,000,000.00 and recorded in the Register's Office on August 2, 2005.

178.    Upon information and belief, the lien of Defendant IRS is based, among other things, upon Notices of Federal Tax Lien filed with the New York County Clerk's Office on March 12, 2017 and April 30, 2019.

---

[4] Notwithstanding anything alleged herein, the Trustee reserves the right to contest the amount of the lien and claim asserted by Defendant Rosenberg.

[5] Notwithstanding anything alleged herein, the Trustee reserves the right to contest the amount of the liens and claims asserted by Axos, IRS, NYS and Printing House.

179.    Upon information and belief, the lien of Defendant Printing House is based, among other things, upon Notices of Lien for Unpaid Common Charges recorded in the Register's Office on September 15, 2017, October 7, 2019 and September 4, 2020 pursuant to New York Real Property Law § 339-z.

180.    Upon information and belief, the lien of Defendant NYS is based, among other things, upon Tax Warrants filed with the New York County Clerk's Office on September 19, 2019.

181.    By virtue of the foregoing, Plaintiff seeks a judgment determining the validity, priority, and extent of liens of the Defendants Axos, IRS, NYS and Printing House, and an order directing payment by Plaintiff of the Net Proceeds of sale to the proper lien holder or holders; and for such other and further relief as to the court seems just and proper.

WHEREFORE, Plaintiff Marc A. Pergament, Chapter 7 Trustee of the Estate of Barnet Louis Liberman., respectfully requests that this Court enter judgment against Defendants as follows:

a.    as to the First Claim for Relief, directing the Defendants to turn over any and all property of the Debtor's estate, plus attorneys' fees and costs, or such other amount as may be determined by the Court, and for a full and complete accounting of Defendants' use of the Transfers;

b.    as to the Second Claim for Relief, directing a turnover of the Transfers;

c.    as to the Third Claim for Relief: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers and ordering recovery of the assets for the estate. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and also awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

29

d.  as to the Fourth Claim for Relief: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

e.  as to the Fifth Claim for Relief: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

f.  as to the Sixth Claim for Relief: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

g.  as to the Seventh Claim for Relief: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

h.  as to the Eighth Claim for Relief: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers. In the alternative, if the assets are not recovered, awarding

Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

i.    as to the Ninth Claim for Relief: (a) finding that the NYC Condo Transfers were fraudulent conveyances; and (b) setting aside the NYC Condo Transfers. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Hudson 805, in an amount to be determined at trial, but not less than the fair market value of the NYC Condo transferred to 805 Hudson on December 26, 2013; and (ii) the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $297,000.00 each; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

j.    as to the Tenth Claim for Relief: (a) finding that the Liberman Group Transfers were fraudulent conveyances; and (b) setting aside the Liberman Group Transfers. In the alternative, if the assets are not recovered, awarding Plaintiff damages against: (i) Defendant Phyllis, in an amount to be determined at trial, but not less than the fair market value of the 50% membership interest in the Liberman Group transferred to Phyllis in or about 2015; and (ii) Defendant Liberman Group, in an amount to be determined at trial, but not less than the sum of $6,912,500.00; (c) each of the Defendant Trusts, in an amount to be determined at trial, but not less than the sum of $622,125.00; and (c) awarding Plaintiff prejudgment interest, or such other amount as may be determined by the Court;

k.    as to the Eleventh Claim for Relief, declaring Defendant Hudson 805 to be the nominee of the Debtor and Defendant Phyllis and finding that the Debtor and Defendant Phyllis remain the true beneficial owners of the NYC Condo Units;

l.    as to the Twelfth Claim for Relief, disallowing any claims of Defendant Phyllis and Defendant Children against the Debtor, including those set forth in Proof of Claim Numbers 32, 37, 40, 41, 56 unless the properties are recovered or these Defendants pay any judgments for their value when transferred;

m.    as to the Thirteenth Claim for Relief, directing the sale of the NYC Condo pursuant to 11 U.S.C. § 363(h) and the equal division of the net proceeds between the estate and Defendant Phyllis according to their respective rights;

n.     As to the Fourteenth Claim for Relief, avoiding the transfer of the security interest to Rosenberg or equitably subordinating the Rosenberg Claim; and

o.     As to the Fifteenth Claim for Relief, determining the validity, priority, and extent of liens of the Defendants, and an order directing payment by Plaintiff of the Net Proceeds of sale to the proper lien holder or holders; and for such other and further relief as to the court seems just and proper.

p.     costs, disbursements and reasonable attorneys' fees; and

q.     such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
November 29, 2022

Weinberg, Gross & Pergament LLP
Attorneys for Plaintiff Marc A. Pergament,
Chapter 7 Trustee for the for the Estate of Barnet Louis
Liberman

By:     /s/ Marc J. Weingard
Marc J. Weingard
400 Garden City Plaza, Suite 309
Garden City, New York 11530
(516) 877-2424